# Richmond

ALMA E. ASHBY v. RED JACKET COAL CORPORATION.

June 10, 1946.

Record No. 3099.

Present, All the Justices.

The opinion states the case.

*S. H. & Geo. C. Sutherland* and *John R. Boggess*, for the appellant.

*F. H. Combs*, for the appellee.

HUDGINS, J., delivered the opinion of the court.

Lawrence Ashby, as the result of an industrial accident, died on October 20, 1942. Alma E. Ashby presented a certificate of marriage and claimed compensation as widow of decedent. On November 5, 1942, an award was entered directing the employer to pay her $17.80 per week for 300 weeks.

Mary McClanahan, the mother of Lawrence Ashby, filed a claim for compensation, which was refused.

The Industrial Commission was informed that Alma E. Ashby had been arrested and charged with bigamy. On receipt of this information, the Commission ordered all payments of compensation to be stopped until the outcome of the criminal trial was ascertained. Mrs. Ashby was acquitted of the bigamy charge. Later Mrs. McClanahan died. The employer, who formerly had occupied the position of stakeholder, filed an application with the Industrial Commission alleging that Lawrence Ashby's marriage to Alma E. Reedy was void because her former husband was living at the time the second marriage was contracted. The Commission entertained the application and, on the hearing, held that the marriage of claimant to Lawrence Ashby was illegal and void, set aside the award and dismissed the case from its docket.

The first question presented is—Has the Commission jurisdiction to hear and determine an application charging that a former award had been obtained on the ground of fraud or mistake?

The identical question was decided in *Harris* v. *Diamond Const. Co.*, 184 Va. 711, 721, 36 S. E. (2d) 573. Mr. Justice Eggleston, after reviewing the conflicting authorities, held that the Industrial Commission was fully clothed, if not by

express then by implied power, to hear and determine all such matters. Speaking to the point, he said:

"On the contrary, it seems far more consonant with the spirit and purposes of the Act to say that the General Assembly intended that the same tribunal which was empowered to hear in a summary manner claims for compensation, was likewise authorized and empowered to determine in a similar manner whether one of its awards should be vacated and set aside on the ground that it had been procured through fraud or mistake.

"Accordingly, we hold that the Industrial Commission has the implied power, incidental to those expressly granted, to entertain and hear an application, seasonably presented, to vacate and set aside an award procured through fraud or mistake. Whether an application is seasonably made must necessarily depend upon the facts and circumstances of the particular case."

The next question presented is whether a judgment of acquittal on an indictment for bigamy is conclusive proof of the legality of a second marriage.

On the trial of the indictment for bigamy it was proven that claimant, whose maiden name was Alma E. Reedy, married one William Norman Babbitt on January 18, 1938, and that, within a week from the date of the marriage, he left for parts unknown. She received no communication from him after his departure. Without obtaining a divorce, claimant, on February 14, 1942, married Lawrence Ashby. She was acquitted of the criminal charge, and now contends that this judgment of acquittal was a final adjudication of her allegation that her second marriage was lawful.

This contention is unsound. (1) The Commonwealth and claimant were the only parties involved in the criminal trial. In the instant case, the Commonwealth is not a party but the employer is. Hence the parties to the two litigations are different. (2) In the criminal case, the burden was, and is always, on the Commonwealth to prove the charge beyond a reasonable doubt. This is not true in the civil case.

(3) Claimant in the criminal trial admitted her two marriages to different men within a period of approximately four years. She admitted that she had obtained no divorce from her first husband. She made little, if any, attempt to prove that her first husband was dead at the time she contracted her second marriage. Her principal ground of defense seems to have been that she acted in good faith in contracting the second marriage. This is apparent from the evidence introduced and the instructions of the court. These instructions were as follows:

"The Court instructs the jury that the only question for you to decide is whether the defendant's second marriage was contracted in good faith under a reasonable belief that her former husband was, at the time, dead. If you believe beyond a reasonable doubt that her second marriage was not contracted in good faith under a reasonable belief that her husband was then dead, you will find her guilty, but if you have a reasonable doubt as to this, you will find her not guilty."

"The Court instructs the jury that if they shall believe from the evidence that the defendant acting upon information sufficient to satisfy a reasonable mind, under all the circumstances, honestly believed her husband, William Norman Babbitt, to be dead, they should find her not guilty."

■ Upon this defense and these instructions the jury returned a verdict of "not guilty," on which the court entered the judgment of acquittal. This court is not now required to pass upon the correctness of the instructions. However, we do hold that, under the circumstances, the judgment of acquittal was not a final determination of the allegation that the marriage to Lawrence Ashby was lawful.

■ The third and final question presented is whether a second marriage is valid when contracted within four years of the first marriage without a divorce or proof of the death of the first consort.

■ ■ The decision in *Harris* v. *Diamond Const. Co.*, *supra*, is a holding to the effect that the Industrial Commis-

sion is clothed with the same power to annul and vacate an award formerly entered that a court of equity has to annul and vacate a judgment or to annul and cancel a deed when the attack is based on fraud, imposition or mistake. The rules of pleading in the two forums are different but are appropriate to the historical background of each. The dominant purpose of all pleading is to inform the other parties to the cause of the precise nature of the charge in order that they may prepare and present their defense. However, when questions of fraud or mistake are involved in either forum, the burden of proof and the character of evidence required to establish the charge should be, and are, the same in each forum, except that hearsay testimony may be admitted and considered by the Industrial Commission.

▇ The principles were stated in *Redwood* v. *Rogers,* 105 Va. 155, 158, 53 S. E. 6, and quoted with approval by Judge Prentis in *Barbour* v. *Barbour,* 155 Va. 650, 653, 156 S. E. 365, to the following effect: " 'The charge of fraud is one easily made, and the burden of proving it rests on the party alleging its existence. It may be proved, not only by positive and direct evidence, but by showing facts and circumstances sufficient to support the conclusion of fraud. But however shown the proof must be clear and convincing, and such as to satisfy the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge.'

"It may be also said with confidence that in suits for the cancellation of a deed on the ground of fraud, the plaintiff, to prevail, must prove the allegations upon which he seeks a relief by evidence that is clear, cogent and convincing."

A transcript of the evidence introduced in the criminal trial, and the depositions and stipulations of counsel, were duly considered by the Industrial Commission. In its finding of fact, the Commission stated that defendant had introduced no credible evidence to establish its claim that William Norman Babbitt, the first husband, was living on the date of the second marriage, and that claimant likewise had failed to

introduce credible evidence to establish her contention that William Norman Babbitt had died prior to February 14, 1942, the date of her second marriage. A careful study of the record leads us to the same conclusion. Chairman Nickels admirably summarized the evidence as follows:

"We have labored faithfully over the record in an earnest effort to find evidence of some type in which we could pin faith to establish the death of Babbitt other than by uncorroborated hearsay. The father of the principal claimant, for instance, states that someone by the name of Babbitt—bearing the same name as his son-in-law—appeared at his home while he was in the act of shoeing a refractory mule, who told the father he was the brother of his son-in-law, William Norman Babbitt, and that Norman was dead. The father states' that he went down in Jewell Valley in an effort to make further inquiries of this person but was not able to locate him. The record shows further such lack of interest in the making of inquiries at the time he should have done so that it provokes doubt in you as for the credibility of his efforts. Again, the mother of the deceased, and a rival claimant, is alleged to have been visited by William Norman Babbitt long after he had left the principal claimant. The mother's statement is proved by a daughter who was clearly inimical to the principal claimant. Again, there is no corroboration that the person who made the representation was in fact Babbitt. It is not established from any of these witnesses that they knew Babbitt in person. We do not deem it necessary to state the facts *pro* and *con*, but to appraise them from the standpoint of their weight and credibility. In doing so, we say unhesitatingly that all the evidence relating to the death of the first husband is based largely upon uncorroborated hearsay of witnesses who passed on the identity of Babbitt and his brother by representation without any actual knowledge as to who they were and under circumstances which were not verified; nor was any effort made to verify them on the part of those who should have been deeply interested in determining them.

"It is interesting to observe that in the trial of the criminal case the claimant submitted her fate to the jury on the defense that, when she consummated the second marriage, she did so on the *bona fide* belief that her first husband was dead. It is apparent the jury accepted this view under the circumstances proved."

This case, in its final analysis, presents this situation: There is a total absence of credible proof tending to show whether William Norman Babbitt, the first husband, was living or dead at the time the second marriage was contracted. Claimant concedes that she married one man on January 18, 1938, and, without obtaining a divorce, married another on February 14, 1942. "The law presumes that a person shown to be alive at a given time remains alive until the contrary is shown by some sufficient proof, or, in the absence of such proof, until a different presumption arises." 16 Am. Jur., p. 16. This presumption of continued existence remains in full force and effect until the passage of the seven-year period, as stated in Michie's 1942 Code, sec. 6239, and, in the absence of credible evidence to the contrary, is conclusive.

The award of the Commission is affirmed.

*Affirmed.*