In re George Allen WILLEY, Helen Beatrice Willey, Debtors.

VILLAGE SAVINGS BANK, etc., Plaintiff,

v.

George Allen WILLEY, Helen Beatrice Willey and David R. Levin, Trustee, Defendants.

Bankruptcy No. 86–00341–N.
Civ. A. No. 86–492–N.
Adv. No. 86–0258–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 12, 1986.

Richard S. Harman, Ann K. Crenshaw, McGuire, Woods & Battle, Norfolk, Va., for plaintiff.

John C. McLemore, Scanelli & Shapiro, Norfolk, Va., David R. Levin, Portsmouth, Va., for defendants.

## OPINION AND ORDER

KELLAM, District Judge.

Complaining of the action of the Bankruptcy Court in declaring its deed of trust

lien against property of Landbank Equity Corporation void and of no effect, in directing a conveyance of the real property conveyed by said trust free of said lien and without the payment of the agreed upon purchase price, and other actions, Village Savings Bank (Village) filed this appeal.

### Statement of Facts

#### I.

The record in this case establishes that by deed from Jerome Gumenick and others t/a Norview Homes to Landbank Equity Corp. (Landbank) dated January 12, 1984, acknowledged January 13, 1984, and admitted to record in the Clerk's Office of the Circuit Court of City of Norfolk [Clerk's Office] on February 21, 1984, at 12:30 o'clock p.m., Landbank acquired title to some 88 lots of land with the improvements thereon, in the City of Norfolk. A deed of trust made by Landbank, dated February 17, 1984, acknowledged February 17, 1984, and admitted to record in the aforesaid Clerk's Office on February 21, 1984 at 12:30 o'clock p.m. [simultaneously and at the same time as above-mentioned deed], Landbank conveyed to Frank E. Butler, III and Frank E. Butler, Jr. (Butlers) Lot 5 in Block C, Seawells Gardens (one of the lots acquired from Norview Homes) to secure a promisory note for $28,000. By deed dated January 20, 1984, acknowledged January 20, 1984, and admitted to record in the aforesaid Clerk's Office on May 15, 1984, Landbank conveyed to Kimberly Company, (Kimberly) a partnership, the 88 lots acquired by Landbank from Norview Homes by the deed aforesaid.

By a land sales contract dated June 23, 1984, acknowledged June 23, 1984, but not admitted to record in the aforesaid Clerk's Office until March 26, 1986, George A. and Helen B. Willey (Willeys) (husband and wife) agreed to buy and Kimberly agreed to sell Lot 5, Block C, Seawells Gardens, for $36,900.00, $1,000.00 of which was paid with the signing of the contract, with the balance of $35,900.00 payable in monthly installments, with the unpaid balance due September 1, 1987. This contract made no specific reference to the deed of trust from Landbank to secure Village, but it contained a provision:

3. ENCUMBRANCES. The Buyer and Seller agree that this contract is subordinate to any present or future deed of trust constituting construction or permanent loan financing on the subject property.

Further, paragraph 13–C of the contract provides:

C. Buyer reserves the right to assume any deed of trust on the property if the same is assumable.

Paragraph 14 of the contract sets forth:

14. REPRESENTATIONS BY SELLER. The Seller makes the following representations:

A. That it is the fee simple owner of the property, subject only to a deed of trust loan and the usual easements and restrictions of record.

B. The deed of trust is not in default . . .

On September 17, 1985, Landbank filed a Chapter 11 petition in Bankruptcy, which was on September 24, 1985 voluntarily converted to a Chapter 7. On December 22, 1985, the Bankruptcy Court entered an order granting Village relief from the automatic stay imposed by reason of Landbank bankruptcy, permitting Village to proceed to enforce its debt secured by the deed of trust dated February 17, 1984. The aforesaid deed of trust carried a provision that if any part of the property conveyed by the deed of trust was sold or transferred by borrower without lender's written consent, lender could, at its option, declare the debt due and payable. On the basis of the transfer by Landbank to Kimberly, Village sought to declare the full debt due.

Upon learning of the fact Village was seeking to enforce the lien of its deed of trust dated February 17, 1984 from Landbank which covered the same lot which Willeys had contracted to purchase of Kimberly, Willeys, on February 13, 1986, filed a Chapter 13 Petition in Bankruptcy, listing Village as the holder of a deed of trust lien against said property. On March 26, 1986,

Willeys caused the contract with Kimberly for sale of said lot to be recorded in the aforesaid Clerks' Office. On March 25, 1986, Village, who had been listed as a lien creditor and holder of the aforesaid deed of trust by Willeys, by reason thereof, filed a motion in Willeys' bankruptcy proceedings seeking to have the Bankruptcy Court modify or lift the automatic stay provisions of the Act. In that motion Village set forth that Willeys asserted an interest in said Lot 5, Block 6; that it held the aforesaid deed of trust from Landbank on said lot; that Landbank by reason of the aforesaid conveyance to Kimberly triggered the acceleration clause of the deed of trust; and Village declared the full debt immediately due and payable. Attached to the motion was a copy of the Willeys' Contract of Purchase from Kimberly, the note and deed of trust, and the deed from Landbank to Kimberly.

On April 7, 1986, Willeys, through counsel, filed an application for entry of an order in accordance with the Plan submitted by debtors. It set forth that the proposed Plan provided that upon confirmation, Kimberly, as "owners of title for the Debtor's residence, shall forthwith execute and deliver to Debtors" [Par. 1 of Application] a deed conveying said lot; that by an order entered December 23, 1985, it appeared Kimberly had abandoned its interest in the property; that Willeys are the equitable owners of said Lot 5, Block C, and upon abandonment by Kimberly, Willeys should be considered the fee simple owners of said lot; and that Willeys "should be permitted to pay the deed of trust note due Village Savings Bank and keep it current in place of Landbank Equity or the Kimberly Company." [Par. 4 of Application]. The prayer of the Application was that the court decree the property had been abandoned to Willeys, "subject to the deed of trust lien of Village Savings Bank, which shall not be foreclosed upon so long as the Debtors pay the note and keep it current." [prayer of Application].

On April 8, 1986, Willeys also filed an answer to the Motion of Village for relief from the stay. In paragraph 3 of such answer Willeys alleged Kimberly had a duty to keep the payments due Village current in order to convey clear title under the sales contract. The answer further questioned whether, under the circumstances, Landbank's conveyance to Kimberly could have violated the provisions of the deed of trust triggering the acceleration clause. Further, the answer denied that Village had been harmed by any transfer from Landbank to Kimberly, and its "lien is retained under paragraph 3 of the Debtor's Plan, and speedy relief is available from this court at any time should the Debtor default in the future." [Par. 6 of Answer]. The answer further set forth that the "deed of trust provided for mortgage insurance, "which the plaintiff [Village] may already hold or may place on the property as it chooses at *Debtor's expense*." [underscoring added. Par. 6 of Answer].

On April 8, 1986, Willeys also filed a counterclaim against Village. The counterclaim asserted Landbank did not appear to be the owner of the property in question on February 17, 1984, the date it attempted to convey the property by the deed of trust to secure the note therein described; that the Trustees as agents for Village knew or should have known the property had been conveyed to Kimberly by Landbank and Landbank was no longer the owner of the property at time of making of the deed of trust, and Village's Trustees and agents knew or should have known that the Land Sales Contract was rendered of little value or altogether meritless by the due on sale clause of the prior recorded deed of trust." [Par 3 of Crossclaim].[1] The crossclaim fur-

---

1. This statement is not clear. Apparently what is meant is that inasmuch as the trustees in the deed of trust were trustees and agents for Village and the form of sales contract was on Butler's stationary, Village knew or should have known that inasmuch as the deed of trust securing Village had been recorded before Landbank conveyed the property to Kimberly, Village knew there was little or no equity in the property and therefore the sales contract between Kimberly and Willeys was rendered of little or

ther asserted that knowledge of the facts by Butlers as agents of Village should bar enforcement of the deed of trust. Village responded to the counterclaim after the Bankruptcy Court had denied its motion to strike it—and asserted its deed of trust was a valid and enforceable lien.

On May 28, 1986, the Application of Village for relief from the order of stay and the crossclaim and motion to approve the Plan came on for hearing before the Bankruptcy Court. A motion for a continuance of the matter was denied. Following the hearing, the judge delivered his decision from the bench, later incorporated into a written order of June 17, 1986 and supplemental order of June 19. Motions to alter and amend his findings were denied.

By order of June 17, 1986 the Bankruptcy Court confirmed the Chapter 13 Plan of Willeys and, among other things, held that:

Village, Kimberly and Landbank had such a relationship among themselves that Village knew or should have known that wrongful, improper and fraudulent conduct was involved, and Village participated in it.

The deed from Landbank to Kimberly was executed, delivered and received on January 20, 1984.[2]

That Butler prepared the deed from Landbank to Kimberly dated January 20, 1984, and had full knowledge of the transfer; that he represented Village and Landbank in the deed of trust transaction; that he prepared the sales contract form for use by Kimberly and had knowledge of the intended use of such contract.

That Village, with knowledge of the "due on sale" clause of the deed of trust knew or should have known that the purchase by Kimberly had already triggered those acceleration provisions of the trust, and Village waived the due on sale clause as to the Kimberly sale.

That with Villages' knowledge of the sale by Landbank to Kimberly, the recording of Villages' deed of trust of February 17th was and became "ineffective, null and void against the deed of Landbank … to Kimberly … and also against the Debtor who stands in the chain of title from Kimberly …" [Par 12].

That Willeys have been forced into Bankruptcy by the conduct of Village and its relationship with Landbank and Kimberly and their common owners "all of whom the court finds have been intertwined in wrongdoing and fraud, by clear and convincing evidence … " [Par. 13]

That the deed of trust lien of Village asserted in this case is null and void "by reason of fraud and also because Village … had sufficient notice under the Virginia recording statute of a prior transfer of the subject property by Landbank and Village … is entitled to receive nothing from the Debtors and is directed to refund promptly to the Debtors all money paid to it theretofore by Debtors." [last par. of order]. and the relief from stay sought by Village is denied.

By a supplemental order of June 19, 1986, the court authorized and approved the execution and delivery of a deed dated June 3, 1986 from Kimberly to Willeys for said Lot 5, Block C.

The above facts are established by the written record and are not in dispute. In addition to the above established facts, other facts were presented by oral testimony before the Bankruptcy Court at the hearing held on May 28 and 29, 1986.

II.

All parties agree that in a review of the findings of fact by the Bankruptcy Court, this court must do so under the clearly erroneous standard. Bankruptcy Rule 8013; *Harman v. Levin,* 772 F.2d 1150, 1152–53 (4th Cir.1985). *See also Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Under such standard, "[T]he find-

---

no value by reason of the fact that the sale triggered the acceleration clause of the trust.

**2.** "Title passes by execution and delivery of the deed." *Gannaway v. Federal Land Bank,* 148 Va. 176, 138 S.E. 564, 565 (1927).

ings were never conclusive," for a "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Anderson v. City of Bessemer City, supra*, 470 U.S. at 573, 105 S.Ct. at 1511. In *Anderson*, the Supreme Court pointed out that this standard does not entitle a reviewing court to reverse the findings of the trier of fact simply because it is convinced that it would have decided the case differently. This court does not decide factual issues *de novo*. But, in a case where "errors of law occurred, [t]hese we can, of course, correct." *United States Gypsum Co.*, 333 U.S. at 394, 68 S.Ct. at 541. "A trier may not insulate his findings from review by denominating them credibility determinations" for "[d]ocuments or objective evidence may contradict the witness' story ..." *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512.

## A.

Keeping these principles in mind, we turn to the oral evidence presented to the Bankruptcy Court. As counsel for the Willeys points out in his brief on page 4:

> Most of the pertinent facts appear of record on the certified real estate documents recorded in the Clerk's Office of the Circuit Court of Norfolk and entered in evidence as exhibits in the hearing on the case at bar.

**3.** While the deed of trust provided any such waiver must be in writing, this is not an issue here. Even if it was an issue, there is no challenge to the fact that Village agreed to the transaction and that a subsequent conveyance by Landbank to a partnership was not to trigger the acceleration clause. The requirement that such a condition be in writing was waived. *See Chittum v. Potter*, 216 Va. 463, 219 S.E.2d 859, 863 (1975); *United States v. Newport News Shipbuilding*, 571 F.2d 1283, 1286 (4th Cir.1978); *Coastline Corp. v. Third National Mortgage Co.*, 611 F.2d 969 (4th Cir.1979).

**4.** There is no challenge to the evidence that Village was making loans to cover the purchase price of the property from Norview Homes.

There is no challenge to the fact Landbank agreed to purchase the subject property and some 87 other houses and lots from Norview Homes. Landbank had arranged with Village to finance the purchase. Prior to taking title, Landbank's accountant advised there would be tax advantages to Landbank taking title in the name of a partnership or a Chapter "S" corporation. Upon being advised of the desire of Landbank to take advantage of such arrangements, Butler, counsel for Landbank, and also the person who would be closing the loans for Village, telephoned H. Lee Yeaton, at Village, relative to transferring the loan to another corporation or partnership. He was told to close the loans in the name of Landbank because Village had approved the loans to Landbank as maker and they had some type of mortgage guarantee insurance on these loans and wanted to be very sure that they had the mortgage guarantee insurance. He was directed to close the loans to Landbank, and then Landbank could make the conveyance to Kimberly, and that while the deed of trust carried a provision that a conveyance would trigger the acceleration clause, Village would not consider such conveyance as triggering the clause.[3] The deed of trust from Landbank to Butlers, as trustees to secure the funds advanced by Village to cover the purchase, was dated February 17, 1984, acknowledged the same day, and admitted to record February 21st simultaneously with the deed of bargain and sale from Norview Homes.[4] Butler further testified that he

The record of the testimony of Mr. Butler on this question is not contradicted:

> Q. And that Village Savings Bank made purchase money loans to Landbank?
> A. That's correct, made 88 loans on 88 houses.
> Q. And to enable Landbank to purchase the property?
> A. That's correct. [Tr. p. 16]
> Q. ... so when the property was purchased it was purchased by Landbank, correct?
> A. That's correct. That's the way I was instructed to ... by both parties to do that.
> Q. And then subsequent to that time there was a transfer from Landbank to Kimberly?
> A. That's true.

could not say when the deed from Landbank to Kimberly was prepared, but that it was not sent or delivered to Landbank for signature until May 3, 1984; that he could not tell "when the deed was signed, but it had to be after that date." (Tr. p. 21, lines 10–11).[5]

While Butler prepared a form of contract which Landbank might use in contracting for the sale of the houses and lots purchase, the form of contract left the date, name of the buyers, property to be sold, purchase price and other matters blank, he knew nothing of the contract of sale of the subject property to Willeys until this litigation arose. Under the facts of this case, it would have made no difference if he had had knowledge of the sale to Willeys. Butler could offer no explanation as to why the deed from Landbank to Kimberly was dated January 20, 1984 and acknowledged January 21, 1984, "because that's prior to the initial closing, prior to receiving the source deed." (Tr. p 25, line 22)

Willeys did not acquire any interest in Lot 5, Block C until the contract of June 23, 1984. This contract was not recorded until March 26, 1986. Hence, at the time of making of the contract between Kimberly and Willeys, on June 23, 1984, the deed from Norview Homes to Landbank, and simultaneously therewith the deed of trust from Landbank to secure Village for the funds loaned by it for the purchase price had been simultaneously delivered and recorded. The deed from Landbank to Kimberly though dated January 20, 1984, was not recorded until May 15, 1984. Hence, an examination of the records would have shown Willeys that on June 23, 1984, when they contracted for the purchase of said

property, Kimberly held title to the property subject to the lien of Village.[6] Further, as shown above, the very contract between Willeys and Kimberly set forth that the property was subject to any present or future deed of trust constituting construction or permanent loan financing.

### III.

The Bankruptcy Court held that the deed from Landbank to Kimberly dated January 20 and acknowledged January 21 was delivered on January 21st. Such a holding, from the record in this case, could only be based on the fact the deed was acknowledged January 21st. Such a holding disregards the otherwise unchallenged testimony of Butler that he could not say when the deed was prepared, but that it was not sent to Kimberly for execution until May 3, 1984. Further, the Bankruptcy Court held that since the deed from Landbank to Kimberly was delivered on January 21, 1984, when Landbank conveyed the property to secure Village on February 17, 1984, it had no title, and such trust was void. Such holding totally disregards the unchallenged evidence that Landbank, Kimberly and Village all agreed the loans were to be made to Landbank and closed and that thereafter Landbank would convey the property to Kimberly.

The Bankruptcy Court further held that Village had knowledge of the conveyance by Landbank to Kimberly at the time the deed of trust to secure Village was made and recorded, and therefore the deed of trust from Landbank to Butlers as Trustees securing Village was void.

As is hereafter set out, there can be no question either of law or fact that the deed

---

5. Butler testified to the fact the deed could not have been executed prior to May 3, 1984, because it was not sent to Landbank until that date. See Tr. p. 24, line 19; p. 27, line 3; p. 36, line 9; p. 37, line 11; p. 37, line 16.

6. § 55–96. *Contracts, etc., void as to creditors and purchasers until recorded; priority of credit line deed of trust.*—A.1. Every such contract in writing, and every deed conveying any such estate or term, and every deed of gift, or deed of trust, or mortgage conveying

real estate ... shall be void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is duly admitted to record in the county or corporation wherein the property embraced in such contract, deed or bill of sale may be. ... nor shall the mere possession of real estate of itself be notice to purchasers thereof for value of any interest or estate therein of the person in possession....

of trust lien of Village is a valid and subsisting lien against the property in question.

## IV.

In declaring such deed of trust void, the Bankruptcy Court relied upon the language of Virginia Code, section 55–96. The applicable portion of that section is set out in footnote 6.

 It is perfectly clear from the statute that the deed of trust is only "void as to all purchasers for valuable consideration without notice not parties thereto." By no stretch of the imagination could Kimberly fall into the class of a purchaser without notice of the lien of the deed of trust. The findings of the Bankruptcy Court are clear that Marika Runnells, as vice president of Landbank, executed the deed to Kimberly and the deed of trust and note to secure Village. She and her husband were the sole owners of Landbank and of Kimberly. She knew that Village was making the loan to Landbank to purchase the property. She knew that Village had required that the deed of trust be made by Landbank rather than Kimberly, and that the deed of trust thus made by Landbank was to be recorded simultaneously and as a part of the deed from Norview Homes to Landbank; she knew that the proceeds from that loan were to be used to pay the purchase price of the property. Too, she knew that the deed from Landbank to Kimberly, regardless of when it was signed and delivered, was subject to the lien of Village and that Kimberly was taking subject to that lien. Not only did she know these facts first hand, but, as the Bankruptcy Court found, she knew these facts through Butler, counsel for both Landbank and Kimberly, and who was handling the closings for Village. As between Landbank and Kimberly, each knew the facts first hand. As between them, they both knew and understood the lien of Village was the first lien having priority over the conveyance from Landbank to Kimberly. Willeys were in no different position. Even if the court assumes Willeys had no actual knowledge

of the lien of Village when they entered into the contract with Kimberly on June 23, 1984, the record in the Clerk's Office fully disclosed the lien and that it had been recorded almost 90 days prior to the time the deed from Landbank to Kimberly was recorded. Willeys were thus on notice of the existence of Village's lien. Had they made inquiry, they would have learned Landbank and Kimberly had agreed that Village's lien was for funds used for the purchase price of the property, and a first lien. So far as the record shows, Kimberly never gave any consideration for the conveyance from Landbank, except accepting the property subject to the lien of Village, the payments on which it was thus making. Not only were Willeys on notice of the record in the Clerk's Office, but the very contract which they signed agreeing to purchase the property set forth that the property was subject to present or future deeds of trust for permanent loan financing. Further, Willeys recognized the validity of the trust and asked that they be permitted to take the property and keep up the payments on the trust lien.

 Again, even if it be assumed Willeys did not have actual or constructive notice of the lien of Village, the lien of the deed of trust would only be void as to the Willeys, for so much of the purchase price as paid by them under the contract. Village had a lien against the property, subject to the rights of bona fide purchasers for a valuable consideration and without notice. Kimberly did not fall in that class, nor did the Willeys. But even if Willeys fell in that class, they would not be bona fide purchasers for value for the remaining unpaid purchase price. *See* Virginia Code section 55–104. Village is entitled to have such unpaid purchase price, or so much thereof as is required to discharge its debt paid to it to satisfy its lien.

To permit the judgment of the Bankruptcy Court to stand would be a windfall to the Willeys. They would be unjustly enriched at the expense of Village. Requiring them to pay the balance of the purchase price to discharge the lien of Village

would be in accord with their contract and agreement.

## V.

■ Accepting any version of the record and testimony and the circumstances that one may, it is beyond doubt that it does not establish fraud on the part of Village, or of any party.

It is difficult to define what kind of evidence is necessary to establish fraud. It need not be proven by direct evidence. Like any other fact it may be proven by circumstantial evidence. It may often be established by the motives and intentions of the parties, which can be judged by their actions, and the nature and character of the transactions. *Ashby v. Red Jacket Coal Corp.*, 185 Va. 202, 38 S.E.2d 436 (1946). Fraud is never presumed but must be proven and the burden of proof is upon the one alleging it to prove it by clear and convincing evidence. *Winn v. Aleda Constr. Co.*, 227 Va. 304, 315 S.E.2d 193 (1984); *Huntley v. The North Carolina Bd. of Educ.*, 493 F.2d 1016, 1019 (4th Cir.1974). Constructive fraud must be proven by clear, cogent and convincing evidence. *Wells v. Weston*, 229 Va. 72, 326 S.E.2d 672 (1985).

Here, Village agreed to lend Landbank funds for purchase of some 86 houses and lots. Landbank wished to take title in the name of Kimberly—each company jointly owned by the Runnells—the loans were closed in the name of Landbank and the property then conveyed to Kimberly. Even if the conveyance to Kimberly was made prior to the execution and recording of the deed of trust to secure Village, all the parties knew and intended the deed of trust lien to take precedence over the conveyance to Kimberly. No facts or circumstances in the record establish anything different or any fraud. The fact is the deed of trust to secure Village was recorded prior to recording the deed from Landbank to Kimberly. Kimberly had both actual and constructive notice of the lien. Subsequent to the recording of the deed from Landbank to Kimberly, Kimberly agreed to sell the house and lot in question to Willeys. The very contract signed by Willeys and Kimberly set forth that the buyer and seller agree that this contract is subject to any present or future deeds of trust constituting permanent loan financing on the subject property. Even without such provision in the contract, Willeys were on constructive notice of the existence of the lien of Village because it was duly of record in the Clerk's Office. The main purpose of the recordation statutes is to give constructive notice to purchasers and encumbrancers who seek to acquire some interest or right in the property. *Chavis v. Gibbs*, 198 Va. 379, 94 S.E.2d 195, 197 (1956). "The deed of such prior purchaser is void against a subsequent purchaser for value without notice until and except from the time it is duly admitted to record." *Gannaway v. Federal Land Bank*, 148 Va. 176, 138 S.E. 564, 565 (1927). Village and Willeys trace their title from Landbank "and it was their duty to examine the records and ascertain whether or not their vendor[s] Landbank [Hill and wife] had made a conveyance of the land to any other person ..." and "[I]f [they] had done this, [they] would have ascertained that" Landbank had conveyed the property in question to secure Village prior to conveying it to Kimberly. *Pillow v. Southwest Va. Improvement Co.*, 92 Va. 144, 23 S.E. 32, 34 (1895). "Every prudent man about to purchase land searches the record to see whether the property has been previously conveyed or encumbered. It is gross negligence not to do so." *Pillow*, 23 S.E. at 34. With the lien of Village of record, Willeys could not have been a bona fide purchaser. The record is silent as to any representation of the status of the title to subject property made by Kimberly, but if any representations were made, they could not bind Village.

Further, Willeys are not bona fide purchasers for value but even if they were, they would not be as to the unpaid balance of the purchase price.

In view of the above holdings, the court need not reach the other objections raised

by Village in this appeal not already dealt with above.

## VI.

The holding of the Bankruptcy Court declaring the deed of trust lien from Landbank to Butlers as trustees, securing Village as void and of no effect, and not a prior lien on Lot 5, Block C, and prior to the rights conveyance by Landbank to Kimberly, and to the rights of Willeys under the contract of sale between Kimberly and Willeys is hereby reversed and set aside, and such deed of trust, as to the balance due thereon and unpaid, is declared as a first and prior lien on said property, taking priority over the conveyance by Landbank to Kimberly and the contract between Kimberly and Willeys.

Further, the findings of the Bankruptcy Court that:

1. The deed from Kimberly to Willeys conveying Lot 5 in Block C as free and clear of the deed of trust securing Village is REVERSED and such conveyance is subject to the said deed of trust.

2. Village knew or should have known that subsequent purchasers from Kimberly might be defrauded by the appearance of taking subject to a deed of trust when the "due on sale" clause had been triggered is REVERSED AND SET ASIDE.

3. Village informally waived the "due on sale" clause in the deed of trust from Landbank to Butlers' trustees, as to the transfer from Landbank to Kimberly, is AFFIRMED.

4. Village in its relationship with Landbank and Kimberly and their common owners have been intertwined in wrongdoing and fraud is SET ASIDE AND REVERSED.

5. Village is not entitled to receive anything from Willeys and is required to refund to the debtor all money paid to it heretofore by Willeys is REVERSED AND SET ASIDE.

The deed of trust securing Village being in default, Village is entitled to relief. It waived the "due on sale" clause as to the conveyance by Landbank to Kimberly, and is not entitled to the benefit of the acceleration clause of the trust by reason of that sale. The court expresses no opinion as to whether the conveyance by Kimberly to Willeys triggers the due on sale clause. Too, the record seems to indicate that Willeys were willing to make the payments required by the trust to have been made by Landbank or Kimberly. Under the contract between Kimberly and Willeys, it appears the unpaid balance of the purchase price was to become due on September 1, 1987.

The nature of the relief to which Village may be entitled is a matter about which this court expresses no opinion. This action is REMANDED to the Bankruptcy Court for further proceedings in accordance with this opinion, and as to the relief to which Village may be entitled.