## Richmond

### General Appliance Storage Co.

v.

### Richmond, Fredericksburg and Potomac Railroad Co.

June 6, 1980.

Record No. 780924.

Present: All the Justices.

*John H. Ariail, Jr.* (*Tolbert, Smith, Fitzgerald & Ramsey,* on brief), for appellant.

*Fred C. Alexander, Jr.* (*Boothe, Prichard & Dudley,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal we determine whether the Richmond, Fredericksburg and Potomac Railroad Co. (RF&P) is liable in damages for terminating a lease and sublease involving commercial property in Arlington County.

RF&P leased two warehouses to General Appliance Storage Co. (GASCO). Paragraph 16 of the lease gave RF&P the right to terminate the lease in event of default for thirty days in the payment of any rent therein reserved, provided GASCO failed to cure the default within thirty days after notice.

Later an Indenture of Sublease was executed by RF&P as "Lessor," GASCO as "Lessee," and AFA Importers, Ltd. (AFA), as "Sublessee," subletting one of the warehouses to AFA, a beverage distributor, for the remainder of the lease term. AFA agreed to pay its monthly rental directly to RF&P, but since the amount due by AFA was less than the amount owed by GASCO to RF&P under the original lease, RF&P was required to send a monthly bill to GASCO for the difference, approximately $430.00 per month. Under the sublease, GASCO assumed liability to RF&P for the performance by AFA of all the covenants and agreements in the original lease, including the obligation to pay rent in the event AFA defaulted in the payment thereof.

GASCO continued to pay its monthly rental as billed, but AFA was in default for all rents due after December 1, 1973. GASCO twice inquired of RF&P as to AFA's rental account, but, because of bookkeeping errors at RF&P, GASCO did not learn of the rental delinquency.

By letter dated May 31, 1974, RF&P notified GASCO that because of AFA's default in payment of the rent, RF&P was cancelling the lease unless the default was cured within the thirty-day period.[1] The default was not cured by June 30, 1974, and by letter dated July 8, 1974, received by GASCO on July 10, 1974, additional notice was given to GASCO.[2]

The arrearage was never paid, and RF&P took possession of the two buildings and leased them to a third party. On July 21, 1977, GASCO filed a motion for judgment against RF&P, alleging that the lease was terminated by RF&P by its letter of July 8, 1974, that the termination and repudiation of the lease was improper, that it was in violation of the lease, and that GASCO had suffered damages as a result of the termination and repudiation of the lease.

In the trial court summary judgment was entered for the defendant. The lower court held that RF&P had properly terminated the lease.[3]

---

[1] This letter stated in pertinent part:

Notification is hereby given to you in accordance with Paragraph 16 of the above-mentioned Lease, that AFA Importers, Ltd, is in default of rental payments for a period exceeding the 30 day period with a total amount due Railroad from December 1973 through May 1974 of $23,356 including real estate taxes and, therefore, the Railroad Company is cancelling the said lease and sublease as of June 30, 1974, unless said default is cured by that date.

As you know, both GASCO and AFA are responsible for the rental obligations, and as provided in the lease and sublease, the cancellation of this Lease does not relieve you of the obligations assumed therein.

In the event this default is not properly cured, it is requested that the premises be left in a neat, clean and orderly condition upon your vacation of the premises and that you forward me the keys to this building.

[2] This letter stated in pertinent part:

This is with further reference to my letter to you dated May 31, 1974, by which the RF&P Railroad Company cancelled the Deed of Lease dated April 1, 1961, Supplemental Letter Agreement dated November 9, 1970, and Indenture of Sublease dated January 16, 1973, as of June 30, 1974, unless default in rental payments is cured by that date.

Since said default was not cured by June 30, 1974, the purpose of this letter is to further assert Railroad's termination notice and advise each of you that the total amount due Railroad through June 30, 1974, is $27,216 including real estate taxes. In addition, both GASCO and AFA are responsible to Railroad for this monetary obligation and, as provided in the Lease and Sublease, the cancellation of these instruments does not relieve you of the obligations assumed therein.

[3] In its decision of March 16, 1978, the trial court held in part:

I hold that the notice of July 8, received July 10, was a sufficient notice under the lease; and that any earlier waivers were ineffective.

I hold that GASCO, as of July 10, should have realized it had thirty days under the lease to get the rent paid. It did not, by its own statement. Indeed,

GASCO contends on appeal that jury questions were presented as to whether RF&P had waived its right to terminate the lease and whether RF&P was estopped to assert its right of termination, and thus the lower court erred in withholding those issues from jury determination.

## I. *WAS THE DEFAULT WAIVED?*

█ The contention of GASCO is that it first learned of the delinquent rent from AFA when, on June 7, 1974, it received the letter from RF&P dated May 31, 1974. After posting the letter, RF&P received GASCO's monthly check of approximately $431.00, which was the difference between what AFA owed and the total rent on the properties. This acceptance of rent, GASCO argues, was a waiver by RF&P of its right to terminate the lease.

In this connection it is to be remembered that the letter of May 31 was reiterated and reemphasized by the letter of July 8, 1974, which was received July 10, and thereafter nothing was paid.

We believe that this phase of the case is controlled by our holding in *Eagler* v. *Little,* 217 Va. 869, 872, 234 S.E.2d 242, 244 (1977), where this court said: " 'The waiver of one forfeiture is of course not a waiver of a subsequent forfeiture: And *if the act of forfeiture be continuing, a waiver of a right of re-entry for one breach will not preclude a re-entry for a new or continuing breach.'* " (Emphasis added.)

The breach of the lease was a continuing one, and under these circumstances the right of termination was continued.

## II. *WAS RF&P ESTOPPED?*

█ GASCO says in its brief that the facts which create an estoppel are esentially those relied upon in the waiver arguments. We conclude that the result is the same as reached on the waiver arguments.

In essence, GASCO is saying that certain telephone calls of March 1 and April 17 to RF&P, which resulted in GASCO not receiving the correct information as to the indebtedness of AFA, plus another telephone conversation of June 7, in which GASCO was told that the

---

GASCO, while not physically occupying Building number 2, never physically entered it on AFA Importer's leaving, it did not claim possession of it; it acceded to the railroad's demand for possession of it.

Further, on August 16, 1974, GASCO's President . . . wrote Whitmore of the railroad, saying in part, '. . . would you please consider reinstatement of our Ball Street lease and assignment of the sublease to Freeman along the lines we originally had with AFA?'

letter of May 31 was just a formality to get action from AFA, created equitable estoppel against RF&P. In effect, the Lessee contends that the Lessor is estopped to collect its rent or enforce the termination provisions of the lease because the Lessor gave incorrect information as to the rental account of the Sublessee.

GASCO certainly knew on June 7 that the rent was substantially in arrears and would have to be paid by it if not by AFA. There was no duty under the lease for RF&P to notify GASCO that AFA was in arrears, and there was no showing that RF&P intended to mislead GASCO. Since AFA was occupying property adjacent to GASCO, and its occupancy was by virtue of a sublease from GASCO, GASCO at all times had available this source of information concerning the status of the rental account.

The elements of equitable estoppel have not been proved and are not available here to defeat the termination. *See Boykins Corp.* v. *Weldon, Inc.,* 221 Va. 81, 266 S.E.2d 887 (1980), this day decided.

We hold that the evidence presented no factual issues for the jury to resolve and that the trial court was correct in entering summary judgment for the defendant. For these reasons the order appealed from will be

*Affirmed.*