NATIONWIDE INSURANCE COMPANY, ET AL.

V.

EDWARD N. PATTERSON, D/B/A, ETC.

Record No. 820908

Decided June 14, 1985, at Richmond

Present: All the Justices

*John D. Eure (Ronald M. Ayers; Woods, Rogers, Muse, Walker & Thornton,* on briefs), for appellants.
*W. Wayne Heslep (Ganas and Natkin,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This dispute centers on an insurance agent's representations concerning the meaning of certain language in an insurance policy. Based on those representations, the customer purchased the policy. The agent's representations were incorrect. The customer sued the insurance company and the agent, alleging constructive fraud. The trial court ruled in favor of the customer. The insurer and its agent appealed.

The facts are these: In 1976, Edward Patterson, doing business as Patterson Equipment Company, secured a group life and health insurance policy from Nationwide Insurance Company through Nationwide's local representative and agent, E. Bolivar Huffman.

That policy remained in effect through late 1979. In October 1979, Nationwide made changes in the policy. It sent documents, to Huffman, reflecting these changes. Huffman was directed to deliver the documents to Patterson.

Huffman visited Patterson's business. He explained the changes. He advised Patterson that Patterson could either accept the changes or secure insurance elsewhere. In his conversation, Huffman discussed the so-called "stop loss" payment feature of the new policy. He told Patterson that pursuant to the stop loss feature, once Patterson had paid $1,000 in major medical expenses, the policy would pay *all* additional expenses. This representation by Huffman was in error. In fact, the policy did not say it would pay all additional expenses but that it would pay "100% of all *eligible* expenses." (Emphasis added.)

Based on Huffman's representations, Patterson accepted the new policy, which meant an increase in premium payments for Patterson. In the summer of 1980, Patterson became ill; he was hospitalized; and his bills exceeded $1,000. Nationwide refused to pay all expenses in excess of $1,000. Patterson sued Nationwide and Huffman on theories of fraud and breach of contract.

The trial court, sitting without a jury, ruled that Patterson proved a case of constructive fraud and was therefore entitled to recover the amounts claimed. The trial court did not rule on the contract claim.

On appeal, Nationwide and Huffman raise three issues. First, they contend Patterson did not prove all the elements of constructive fraud. Second, they contend Patterson failed to prove his claim of breach of contract. Third, Nationwide argues that, as an innocent principal, it cannot be liable for Huffman's misrepresentation. In the view we take of the case, we need not consider the contract issue. We will confine our review to the constructive fraud and agency issues.

In order to establish constructive fraud one must prove the following by clear, cogent, and convincing evidence: that there was a material false representation, that the hearer believed it to be true, that it was meant to be acted on, that it was acted on, and that damage was sustained. *See Jefferson Stand. Ins. Co.* v. *Hedrick*, 181 Va. 824, 833-34, 27 S.E.2d 198, 202 (1943); *Mears* v. *Accomac Banking Co.,* 160 Va. 311, 321, 168 S.E. 740, 743 (1933); *Cerriglio* v. *Pettit*, 113 Va. 533, 544, 75 S.E. 303, 308 (1912).

Nationwide argues that Patterson failed to establish reliance. It cites testimony from Patterson on cross-examination

where he was asked what he would have done had he known the true facts before he accepted the changed policy. Patterson said he did not know what his decision might have been under those circumstances. Nationwide argues that this statement shows that Patterson did not rely on Huffman's misrepresentation. Nationwide's argument displays a misunderstanding of the proper test for reliance. The question is not whether Patterson might have acted otherwise had he known the truth. The question is whether Patterson, in fact, relied on Huffman's misrepresentation. The evidence plainly shows that Patterson relied on Huffman's misrepresentation in accepting the revised policy. On direct examination, Patterson testified as follows: "I was particularly concerned with the fact that after we paid a thousand dollars out of pocket then the rest of our expenses would be covered one hundred percent by Nationwide and that was the main reason that we went along with the major medical part of the policy."

Nationwide next argues that prior to the 1979 policy change instituted by Nationwide, Huffman suggested that Patterson increase his hospital room and board coverage from $40 per day to $100 per day. Patterson rejected this idea because he thought the cost was too high. Nationwide argues that had Patterson purchased the additional coverage suggested by Huffman, most of the hospital costs here in dispute would have been covered. Thus, argues Nationwide, Patterson's own decision, not any misconduct by Nationwide or Huffman, was the direct cause of his loss. This argument is without merit. This was a factual dispute that was resolved against Nationwide and Huffman. Upon our review of the record, it is clear that the evidence was sufficient to support the court's conclusion.

Nationwide also argues that Patterson cannot recover because he had available the means of acquiring the correct information about the meaning of the policy. There are several responses to this contention. First, the cases relied on by Nationwide in making this argument are inapposite. *Gen. Appl. Co.* v. *RF&P*, 221 Va. 176, 267 S.E.2d 161 (1980), concerned the termination of a commercial lease and turned on principles of estoppel. *Coleman* v. *Nationwide Life Ins. Co.,* 211 Va. 579, 179 S.E.2d 466 (1971), concerned whether an insurance company was estopped from asserting the lapse of a policy. *Gallimore, Inc.* v. *Home Indemnity Co.,* 432 F. Supp. 434 (W.D. Va. 1977), was a suit based on a contractor's bond; it also concerned estoppel. Second, the written information supplied to Patterson by Huffman stated that if Patterson had any questions he was to contact his agent. In essence,

Nationwide directed Patterson to rely on Huffman to explain the policy. When Patterson followed this direction, the explanation made by Huffman was wrong. Finally, the cases are clear that, in Virginia, one cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth. *See Cerriglio* v. *Pettit*, 113 Va. at 544, 75 S.E. at 308.

Nationwide argues further that Patterson suffered no detriment as a result of his reliance upon Huffman's misrepresentation. Nationwide submits that Patterson received better coverage than he had received prior to accepting the changed policy. In making this argument, Nationwide fails to mention that Patterson was charged a higher premium, and Huffman received more in commissions based on this change. Further, Nationwide ignores the fact that at the time Patterson learned of the mistake, his medical problems had rendered him uninsurable. We think that under the facts and circumstances of this case, Patterson relied to his detriment.

Nationwide further submits that Huffman's statement was not actionable because it was a mere expression of opinion. Nationwide relies on a letter written by Huffman after the fact in which he stated that his description of the policy to Patterson was merely his interpretation of the policy. At trial, Patterson said he never heard Huffman use the word "interpretation" during the conversation in which the misrepresentation was made. The trial court believed Patterson.

Moreover, where the parties are on unequal terms even an opinion can be actionable. In *Cerriglio* v. *Pettit*, we quoted *Grim* v. *Byrd*, 73 Va. (32 Gratt.) 293, 301-02 (1879), as follows:

> "Even a matter of opinion may amount to an affirmation, and be an inducement to a contract, especially where the parties are not dealing upon equal terms, and one of them has, or is presumed to have, means of information not equally open to the other."

113 Va. at 541, 75 S.E. at 307. *See Mears* v. *Accomac Banking Co.*, 160 Va. 311, 321-22, 168 S.E. 740, 743 (1933). Here, Huffman was an insurance professional, a longtime Nationwide agent, while Patterson, his customer, was a layman. On this record, Huffman must be presumed to have means of information about the policy not equally available to Patterson.

■ Finally, with regard to the fraud issue, Nationwide attempts to distinguish the two cases specifically referred to by the trial court in its bench ruling, *Dudley* v. *Estate Life Ins. Co.,* 220 Va. 343, 257 S.E.2d 871 (1979), and *Jefferson Stand. Ins. Co.,* 181 Va. 824, 27 S.E.2d 198 (1943). Though these cases may be factually distinguishable, they support the trial court's conclusion, which we hold to be correct. Patterson proved all the elements of constructive fraud.

■ With regard to the second main issue, Nationwide argues that it is an innocent principal and cannot be held responsible for Huffman's misrepresentation. We cannot accept this contention. Nationwide argues that only by its direct participation can it be held liable for its agents' conduct. We have long adhered to the rule that "a principal is bound by representations of his agent, made either in the scope of his employment or in furtherance of the object for which he is employed." *Cerriglio* v. *Pettit,* 113 Va. at 542, 75 S.E. at 307. In *Jefferson Stand. Ins. Co.,* we explained that the rule is one of public policy and convenience; we said that

"in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through instrumentality of agents. In every such case, the principal holds out his agent, as competent, and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency."

181 Va. at 834, 27 S.E.2d at 202 (quoting J. Story, *Commentaries on the Law of Agency* § 452 (9th ed. 1882)). We reaffirmed our view on this subject in *Dudley.*

■ In this case, Huffman was held out as Nationwide's agent. He was so listed in the local telephone directory. He used Nationwide's letterhead. He was sent to Patterson's business by Nationwide to explain the new policy to Patterson. He was acting within the scope of his employment in representing to Patterson the extent of the coverage provided by the policy.

For all the foregoing reasons, the judgment appealed from will be affirmed.

*Affirmed.*