## CIRCUIT COURT OF FREDERICK COUNTY

Seabright et al.

v.

Nesselrodt et al.

July 3, 1985

Case No. (Law) 4336

By JUDGE ROBERT K. WOLTZ

This dispute arises between the vendee of a new dwelling and the vendor/builder of that dwelling under Section 55-70.1, Code of 1950, enacted in 1979 and which statutorily establishes certain warranties by the vendor in the sale of new dwellings.

The legal background for such actions lies in the common law doctrine of *caveat emptor* as explicated in *Bruce Farms, Inc.* v. *Coupe*, 219 Va. 287 (1978). That was an action such as here by a vendee against a builder/vendor for breach of warranties involving defective materials in the construction of a new residence. There the Court held that the common law rule of *caveat emptor* applied to conveyances and was in effect in this jurisdiction, as a consequence of which the sale of a newly completed residence by the builder/vendor to the initial homeowner carried no implied warranty of fitness for intended use. The Court held that contracts to perform services imply a covenant to perform according to applicable standards of competency, but further by common law rule in the field of conveyancing of real estate there are no covenants except those expressly made in the instrument of conveyance. (The Court distinguished the builder/vendor-vendee situation giving no rise to implied warranty from *Mann* v. *Clowser*, 190 Va. 887 (1950), in which a builder was held impliedly to warrant his work on land already owned by the plaintiff as no conveyance

was involved.) The Court held that any change from the common law rule lay more properly within the province of the legislative branch.

Within a year of the *Bruce Farms* decision the General Assembly enacted Section 55-70.1, which in paragraphs B and F provides as follows:

> B. In addition, in every contract for the sale of a new dwelling, the vendor, if he be in the business of building or selling such dwellings, shall be held to warrant to the vendee that, at the time of transfer of record title or the vendee's taking possession, whichever occurs first, the dwelling together with all its fixtures is sufficiently (i) free from structural defects, so as to pass without objection in the trade, (ii) constructed in a workmanlike manner, so as to pass without objection in the trade, and (iii) fit for habitation.

> F. The term "structural defects," as used in this section, shall mean a defect or defects which reduce the stability or safety of the structure below accepted standards or which restrict the normal use thereof.

The statute further provides that such warranties implied in a contract of sale will survive transfer of title, permits waiver, modification or exclusion of the warranties, gives the vendee a cause of action for breach of warranty, makes the warranty effective for a year from transfer of title or taking of possession, whichever is first, and establishes a two-year statute of limitations from the date of breach of warranty.

The plaintiffs here entered into a contract to purchase the property May 16th, 1983, with provision for delivery of possession June 15th, with a payment on possession of $15.00 per day until settlement, which was scheduled for August 13, though actual settlement was apparently about September 15, the date of the deed. As a result of a letter of August 22nd from the real estate agent to the defendants written at the behest of the plaintiffs, twelve items of correction to the dwelling were listed. The evidence shows that the plaintiffs intended to refuse to go to settlement until these corrections were made.

The defendant made these corrections and subsequent to settlement voluntarily made other repairs or corrections at the request of plaintiffs. The major one of these later corrections was the addition of dirt to the front portion of the front yard and the re-grading of that portion and part of the driveway in an effort to correct the collection and pooling of water in that area. Before the newly graded yard could be seeded by the defendant, the plaintiffs demanded that he not come on the premises in that regard or with respect to other claimed defects in the house itself.

The two main claims of the plaintiff vendees are for further addition of dirt to the front yard, re-grading and re-seeding of it and re-grading and re-graveling the driveway, all for the purpose of during the drainage problem; and the digging up and re-installation of the sewer lateral, alleged to be vertically bowed, leading from the house to the public main, alleged to be the cause of unpleasant sewer odors in the house.

Plaintiffs argue that the major problem of correcting the yard drainage is part of the construction, which by statute is warranted to be in a workmanlike manner because "dwelling" would include its curtilage. Even applying a liberal statutory interpretation its terms do not allow this result. While grading and landscaping may be ordinary incidents to constructing a dwelling, they are no part of the dwelling itself. The statutory warranty applies to "the dwelling together with all its fixtures." By extending the warranty to the fixtures there appears a clear intent to limit application of the warranty to the building structure alone, save only its fixtures. Whether the warranty would extend to garages or other outbuildings within the curtilage of the dwelling is not at issue here. Whether landscaping and grading was defective so as to throw surface water against the foundation and walls of the dwelling, thereby causing casement seepage or undermining of foundations, is not claimed by the plaintiff and likewise is not at issue. The yard itself is claimed to be improperly graded causing a drainage problem. There is no evidence of direct physical impact on the dwelling. Since the dwelling is not involved the warranty is not applicable.

*Arguendo* the alleged defective sewer line from the house to the sewer main is a part of the dwelling as a direct extension of it, an important and necessary appurte-

nance to its intended use and so a part of it. Nevertheless the plaintiffs' evidence on defective sewer line installation is scarcely more than speculation and does not prove the matter by the greater weight of the evidence, particularly in view of the evidence of the defendant on the point. The plaintiffs' claim with respect to the yard grading is denied because not covered by warranty and the claim on the sewer line is denied in any event for failure of adequate proof.

The next item on which the plaintiffs introduce any specific evidence was a bill for $400.00 for sanding walls, repairing cracks and nail pops, caulking door jambs and baseboard and applying paint to walls and trim. There was little evidence by the plaintiffs themselves on these items and no expert testimony to show that they were the result of failure to construct "in a workmanlike manner, so as to pass without objection in the trade." This category of work was done after the plaintiffs had occupied the dwelling nearly two years, and there is no evidence to show that such defects do not occur after that period of time in newly constructed dwellings even when they are erected in a workmanlike manner. Additionally the defendant testified that at the time he made numerous corrections after the occupancy date but before the closing date he was aware of no defects and was told of none. Plaintiffs have not borne their burden of proof on these items.

Plaintiffs did show by sufficient evidence necessary expenses for correcting defects as follows: re-setting certain plumbing fixtures, repairing improperly installed outside faucet and replacing a "T" pipe union or joint with a "Y" union at a total cost of $80.00. These items constitute breaches covered by the warranty implied by statute and the plaintiffs are awarded judgment in that amount with interest from the date of institution of suit, July 12, 1984.