## CIRCUIT COURT OF FAIRFAX COUNTY

Lamps Unlimited, Inc.

v.

Westminster Investing Corp.

April 6, 1987

Case No. (Law) 71492

By JUDGE THOMAS A. FORTKORT

In the case at bar, Lamps Unlimited, Inc., is a Maryland Corporation which ran a retail store at the Seven Corners Shopping Center. Westminster Investing Corporation is the management association which operates the Shopping Center. On July 27, 1976, the Plaintiff and Defendant entered into a twenty-year lease agreement for the operation of a retail store at the Shopping Center.

In the present claim, Lamps Unlimited is the counter-claimant and Westminster is the counter-defendant. The original Motion for Judgment filed by Westminster for unpaid rent was dismissed in a Summary Judgment. For ease of this opinion, Lamps Unlimited will be referred to as Plaintiff and Westminster as Defendant.

Plaintiff's claim is that they were induced to enter into a long-term lease by the Defendant who represented that the Shopping Center would have uniform hours of operation for all tenants. During the lease between the parties, the Defendant did not establish uniform hours of operation for its tenants. After numerous complaints, the Plaintiff broke its lease and moved from the Shopping Center.

On October 28, 1985, Defendant filed a motion for lost rents which was ultimately dismissed by summary

judgment. Defendant filed a counterclaim which is the case at bar.

On January 20, 1987, after a jury trial of several days, verdict was rendered in favor of Lamps Unlimited in the amount of $53,000. Defendant Westminster thereafter filed a motion to set aside the jury verdict which is the subject of this memorandum.

The basic thrust of Westminster's motion to set aside the verdict is that Lamps Unlimited initial complaint occurred approximately one year after the lease was entered into in 1976 and hence this action is beyond the five-year limitation of action on written contracts.

The basic question in the view of this Court is whether the lease between the parties constitutes a continuing contract or continuing covenant that would allow recovery for breaches occurring more than five years after execution of the lease. Defendant argues that Virginia law does not contemplate a theory of continuing contract and cites for that proposition the recent case of *Boykins Narrow Fabric Corp. v. Weldon Roofing and Sheet Metal, Inc.,* 221 Va. 81 (1980). In that case, the Supreme Court of Virginia held that the statute of limitations had run on an action by a building owner against a roofing contractor.

Weldon, the roofing contractor, installed a roof on Boykins' building. After a period of time, the building roof began to leak and Weldon returned many times to effect repairs. After several years of attempted repairs, the roof continued to leak. Boykins secured another contractor and a subsequent inspection revealed improper installation as the reason for the leakage.

Boykins sued and Weldon plead the statute of limitations. Boykins responded citing the doctrine of equitable estoppel, claiming that Weldon had lulled Boykins into inaction by its repeated attempts to repair the roof. The Virginia Supreme Court refused to accept the equitable estoppel argument and, stating familiar principles, held that "the statute begins to run when the right of action accrues. . ." *Boykins, supra* at page 85. The Court went on to cite the requirements of fraud which would be necessary to invoke equitable estoppel and found these requirements had not been met in the Boykins case.

In response, Plaintiff offered the Oklahoma case of *Indian Territory Illuminating Oil Co. v. Rosamond,*

120 P.2d 349 (Okla. 1941). In *Indian Territory*, the defendant lessee was found to have impliedly covenanted to owners of mineral interests in the leased land that he would protect such leased premises from surrounding wells. In oil drilling areas, it is a common implied covenant to protect from surrounding wells because failure to do so would exhaust the oil below the leased land. The Oklahoma Court deemed this implied covenant to be a continuing covenant resting upon the lessee during the existence of the lease.

A continuing contract or a continuing covenant are similar but not precisely the same. *Black's Law Dictionary* defines a continuing contract as a contract "calling for periodic performances over a space of time." *Black's Law Dictionary* 291 (5th Edition, 1979). A continuing covenant is "one which indicates or necessarily implies the doing of stipulated acts successively or as often as the occasion may require, as a covenant to pay rent by installments, to keep the premises in repair or insured, to cultivate land. . . ." *Black's* at 328.

The general rule is dealing with a limitation of action on a continuing contract is stated in 54 C.J.S., *Limitation of Actions*, § 151 (1948). "If a continuing action is entire, an action is maintainable on it only when a breach occurs or the contract is in some way terminated, only this event starts the statute." *See Shokbeten Products Corp. v. Exposaic Industries, Inc.*, 308 F. Supp. 1366 (D. Ga. 1969); *Klondike Helicopter, Ltd. v. Fairchild Hiller Corp.*, 334 F. Supp. 898 (D. Ill. 1971); *Skidmore, Owings & Merrill v. Conn. General Life Ins. Co.*, 197 A.2d 83 (Conn. 1963).

One example of a solution to this accrual of action problem is the determination of whether a complete right of action accrues at the time of the first breach. This principle is espoused in *First Loan & Trust Co. v. Schanche*, 202 N.W. 390 (S.D. 1925), where the South Dakota Court states at page 391:

> If a full recovery of damages can be had upon the first breach, the statute then begins to run; and when this right of action becomes barred plaintiff cannot recover for any subsequent breach through which it accrues within the statutory period before action.

If the courts find that a continuing contract exists, some courts apply the principle that the party alleging continuous breach may decide at his election when several breaches amounted to a total failure of performance. 54 C.J.S. *supra*; *Arco Alloys Division, Airco, Inc. v. Niagara Mohawk Power*, 430 N.Y.S.2d 179 (1980); *Rosenstock v. Congregation Agudath Action*, 164 S.E.2d 283 Ga. 1968).

In the case of continuing covenants, the breach accrues from day to day as long as the breach continues. In the case of repeated breaches, the statute runs as each separate breach occurs. Even if a cause of action for one breach of a covenant is time barred, an action continues to exist for a subsequent breach occurring within the statutory period before the suit. This proposition is cited in 51 Am. Jur., *Limitations of Action*, § 126, *Indian Territory, supra, Baker v. Jeremiasen*, 676 P.2d 1259 (Colo. 1984) and *Bowman v. Oklahoma Natural Gas Co.*, 385 P.2d 440 (Okla. 1963).

If one applies either the "termination of the contract" or "election of the suing party" theory, the result is likely to be the same. Whether the aggrieved party elects the time when he determines enough breaches have made the situation intolerable or he simply walks away from the contract, under each theory he may sue for the entire time period of the contract. This result, at least, would be contrary to the long-established Virginia aversion to stale claims.

The theory of complete breach versus partial breach adds a new problem. At least to this observer, it appears that the determination of complete or partial breach is a question of fact which would require a full evidentiary hearing. Most Statute of Limitation problems can be resolved during a preliminary Plea in Bar hearing. Both parties are spared the ordeal and expense of a long evidentiary trial which may be mooted by the bar of the Statute of Limitations.

The continuing covenant theory does not have these drawbacks. Since any claim beyond the limitation period from the date suit is filed would be time barred, stale claims are eliminated to the extent the statute provides. Since any breach, whether in whole or in part is treated the same as far as the limitation is applied, a total

evidentiary hearing on the statute of limitations will ordinarily not be required.

Finally, the theory of continuing covenants has a long history in Virginia law and English Common law.

In *McKildoe's Ex'or v. Darracott*, 54 Va. (13 Gratt) 278 (1856), the Supreme Court recognized the theory of continuing obligations in the context of a lessor/lessee relationship. The Court described the continuing nature of the parties agreement in these terms:

> The waiver of one forfeiture is of course not a waiver of a subsequent forfeiture. And if the act of forfeiture be continuing, a waiver of a right of re-entry for one breach will not preclude a re-entry for a new or continuing breach. Thus, a lessor may take advantage of a forfeiture occurring de die in diem, as in the case of a neglect to repair, work a mine, or the like, continuing from day to day, notwithstanding a previous distress for rent. 2 Platt on Leases 471, and cases cited. So also, where the covenant was that rooms should not be used for certain purposes, it was held that *there was a breach of this covenant every day during the term that they were so used*; and that the lessor was not precluded by receiving rent subsequent to the commencement of such user, from taking advantage of the forfeiture, provided the user continued after such receipt of the rent. Comyn 334; Doe v. Woodbridge, 9 Barn. & Cress. 376, 17 Eng. C.L.R. 399.

54 Va. at 285 (emphasis added).

The tenant in *McKildoe* made one sub-lease contrary to his lease with the landlord. When the landlord, after knowledge of the sub-lease, accepted rent from the tenant, his right of re-entry was barred. The court found that the subleasing of the premises was a single act and not a continuing act within the terms of its definition. The landlord lost his right to terminate by accepting tenant's non-continuing breach and accepting rent nonetheless.

It is the Court's belief that the landlord waiver of a tenant's non-conforming breach is still good law in Virginia. Later opinions have discussed the doctrine

of "continuing forfeiture" and updated *McKildoe* to modern times. *Eagler v. Little*, 217 Va. 869, 872 (1977) (written acknowledgement that lease was still "intact" did not constitute waiver of continuing forfeiture of tenant's failure to pay taxes); *Gen. Appl. Co. v. R.F. & P.*, 221 Va. 176, 179 (1980) (landlord's right of termination continued since default on rent payment was deemed a continuing breach of lease).

Although these cases focus on the landlord's right to re-enter leased premises, the gist of the Court's arguments illustrate that this right was *perpetuated* by the persistent arrogations of the tenant. The implication is that the landlord/tenant association consists of an on-going interaction and the mutual obligations which flow from the relationship continue during the leasehold.

It is this principle which separates *Boykins, supra*, from the case at bar. In *Boykins*, the owner purchased one piece of construction, i.e., a new roof. When defendant completed the roof, the contract was complete. If the owner was dissatisfied with the roof's construction, he had five years to bring suit. No on-going relationship was ever contemplated when the contract was executed.

In the case before us, Westminster had a continuing obligation to enforce the hours of operation by the tenants in the mall. It was a day-to-day obligation, similar to the obligation to use rooms in a certain way as in the English case of *Doe v. Woodbridge*, above. The case at bar fits within the rule enunciated in 2 Platt on Leases approved by the *McKildoe* court.

In the case at bar, there were no stale claims. Plaintiff, Lamps Unlimited, was permitted to prove only those damages incurred in the five-year period immediately prior to suit being filed. Although breaches occurred prior to that time, those breaches were held to be time barred.

Both Virginia and English common law recognize the doctrine of continuing covenant. When the doctrine of continuing covenant is applied to a limitation of action suit, the rule in *Indian Territory* prevails, i.e., the complaining party may sue for any claim arising within the statutory limitation of action period. Any breach of the leasehold occurring prior to the applicable limitation period is time barred.

The application of any other theory to this case results in either an unwarranted extension of the limitation period or would be contrary to the common law doctrine of continuing covenant which has not been changed by Virginia case law but, in fact, continues to be the Virginia rule.

For the foregoing reasons, the court confirms the jury verdict.