## CIRCUIT COURT OF LANCASTER COUNTY

Kilmar, Ltd.,
and Gay Ann Yanok

v.

Kilmarnock Associates, L.P.,
and Thomas W. Wright, individually

September 19, 1990

By JUDGE JOSEPH E. SPRUILL, JR.

In this chancery proceeding, the Court is asked to rescind a lease, business purchase agreement, note, deed of trust, and escrow agreement and to award compensatory and punitive damages as a result of actual or constructive fraud, and malicious, wanton, and oppressive conduct by the defendant (landlord) in inducing plaintiff (tenant) to enter a lease arrangement. Defendant, by Cross Bill, seeks judgment for unpaid rent and advances.

For purposes of this opinion, Kilmar, Ltd., and Gay Ann Yanok, plaintiff/tenant, are one and the same, and Kilmarnock Associates, L.P., and Thomas W. Wright, defendant/landlord, are one and the same.

Thomas W. Wright, a Virginia lawyer practicing in Richmond and an investor in restaurant properties, was contacted in November, 1988, by plaintiff, Gay Yanok, about leasing a parcel from Wright in Kilmarnock, Lancaster County, Virginia. The parcel had recently been vacated by former tenants of Wright, who had gone bankrupt with

a restaurant operation doing business as Open Hearth Limited.

On December 1, Yanok went to Wright's office in Richmond to discuss a lease arrangement. She returned on December 8 and signed a lease agreeing to rent the property for a period of one year with renewal options. She also signed a business purchase agreement, wherein she agreed to pay $87,000.00 ($5,000.00 down and $82,000.00 eighteen months after date, with 14% interest) for the opportunity to conduct a restaurant business at this location. Yanok executed a note for $82,000.00, secured by a deed of trust against other property she owned. In addition, she signed an escrow agreement assigning to Wright all stock in a new corporation known as Kilmar, Ltd.

Yanok abandoned the premises after approximately nine months and subsequently initiated this action.

*Findings of Fact*

From evidence adduced at a day-long hearing held on September 6, 1990, we find as follows.

1. The premises were not fit for use as a restaurant operation during the period of plaintiff's occupancy. Specifically, despite repairs, the roof continued to leak so that during rains, a portion of the building had to be closed off; the kitchen floor was rotten and unsafe; wiring was inadequate and unsafe; bathrooms overflowed causing sewage to leak into the dining areas; the entire second floor area had neither heat nor air conditioning; windows were rotting and panes were falling out. The Lancaster County Building Official threatened Yanok with legal action if numerous code violations were not promptly corrected.

2. Wright knew of the building's condition. His former tenant, Linda Floyd, who operated Open Hearth, testified she informed Wright "countless times" of the problems, and indeed his failure to take effective remedial action as landlord resulted in the failure of her restaurant operation. Other witnesses, including Wright's agent, Lee Poates, confirmed the building's various deficiencies and Wright's knowledge thereof.

3. Wright represented to Yanok that the premises were suitable for use as a restaurant; that any problems would be promptly remedied so that the property would be fully operational when her tenancy began.

4. Yanok relied on the representations of Wright.

5. Wright knew before the documents were signed of Yanok's limited experience in operating a restaurant and of her complete lack of capital. Indeed, Yanok informed Wright she did not have $700.00 to purchase an ABC license, and the $5,000.00 down payment required by the business purchase agreement was borrowed by Yanok from a friend.

By stipulation, the parties agreed that Yanok occupied the premises for nine months, during which rent was paid for four months. The parties also stipulate that Wright made loans to Yanok totaling $7,173.00.

### Lease

In the lease agreement, Wright represented that he owned the name "The Open Hearth," and it, together with furnishings, fixtures, and restaurant equipment was included as leased property at no additional rent. Wright's former tenant incorporated under this name and testified she gave no authority to Wright to use it. The former tenant's attorney, Matson Terry, testified he telephoned Wright promptly upon learning of its use by Yanok to complain that the name was his client's asset, to which Wright replied, "Don't be a lawyer with me." Wright acknowledged the call from Terry but denied he was warned against using the name. Wright testified he considered the name his property, without explaining how he came to acquire it. This incident, of itself of little import, becomes significant in understanding Wright's method of operating.

In order to establish constructive fraud, one must prove the following by clear, cogent, and convincing evidence: that there was a material false representation, that the hearer believed it to be true, that it was meant to be acted on, that it was acted on, and that damage was sustained. *Nationwide Insurance Co. v. Patterson*, 229 Va. 627 (1985). In the instant case, Wright acknowledged that he did not fully inform Yanok of the condition of the building, that he knew of certain deficiencies about which he did not inform her (i.e., the rotting kitchen floor).

In his testimony, Wright acknowledged telling Yanok that it was his responsibility to repair whatever needed repairing. He acknowledged informing Yanok that the premises were suitable for use as a restaurant. These were material representations, and they were false. Indeed, Wright testified that in September, 1989, he felt he could not afford to make the necessary repairs and soon thereafter sold the building. Yanok testified that she believed the representations of Wright and relied upon them in entering into the lease arrangement. Indeed, Yanok testified that she did not have the money to make repairs. She testified that had she known about the rotting kitchen floor, without more, she would not have entered into the lease.

We find that the parties here were negotiating on unequal terms. "Even a matter of opinion may amount to an affirmation and be an inducement to a contract, especially where the parties are not dealing upon equal terms, and one of them has, or is presumed to have, means of information not equally open to the other." *Nationwide Insurance Co. v. Patterson*, 229 Va. at 631. Wright was the owner of the building, and it was his responsibility to know its condition. Further, his former tenants had informed him of many of the same problems about which Yanok later complained. A number of the defects (i.e., defective plumbing, faulty wiring, rotting floor) were not apparent to observation. Wright was experienced in these matters. Yanok, with only limited experience, was no match for Wright.

We believe the evidence clearly shows that Yanok was induced to sign the lease on the basis of constructive fraud and that Yanok is therefore entitled to its rescission.

### Business Purchase Agreement

In this instrument, also dated December 8, 1988, Wright, as seller, transfers to Yanok his "rights to and interest in the restaurant business to be operated" from the premises specified in the lease. for this, Yanok agreed to pay $87,000.00. The agreement contains a series of representations and warranties by Yanok but none by Wright. When questioned about what was purchased under this agreement, Wright replied that Yanok was purchasing the "oppor-

tunity" to do business at the location described in the lease. However, the lease itself gives Yanok that opportunity because it expressly provides the premises will be "used and occupied solely by the tenant . . . for the purpose of conducting a restaurant business." Wright appears to be selling in the business purchase agreement precisely what he has leased in the lease agreement. A real estate broker experienced in handling sales of restaurant properties testified in behalf of Yanok that selling an "opportunity" to engage in a restaurant business was unheard of in his experience. This was not a franchise operation. The restaurant operation immediately preceding Yanok's at this location had failed. The expert testified that there was nothing of value here. The Court agrees.

A substantial failure of consideration is a well recognized ground for rescission of a contract. *Andrews v. Sams*, 233 Va. 55 (1987). In the instant case, we find that there is a complete and utter failure of consideration as a result of which Yanok is entitled to rescission. She is also entitled to the rescission of the note of $82,000.00, the deed of trust against her Middlesex property, and the assignment of her shares of stock, all of which secure the performance required of her under the business purchase agreement.

### Compensatory Damages

The usual remedy in an action for fraud is to restore the defrauded party to the position he held prior to the fraud. *Murray v. Hadid*, 238 Va. 722 (1989).

The evidence supports an award of compensatory damages to Yanok, based on actual expenses incurred by her and proven at trial, as follows:

| | | |
|---|---|---|
| Repairs to make operational (Plaintiff's Exh. # 11) | | $3,628.42 |
| Moneys spent in reliance (Plaintiff's Exh. # 12) | | |
| Total claimed | $6,477.57 | |
| Less: Not Allowed | (1,511.50) | 4,966.07 |
| Down payment, Business Purchase Agreement | | 5,000.00 |
| Less: Loans from Wright | | (7,173.00) |
| Virginia Power, deposit | | 1,500.00 |
| | | $7,921.49 |

In addition to $7,921.49, the Court will award her reasonable counsel fees and costs, which will be determined at a subsequent hearing.

## Punitive Damages

We decline to award punitive damages against Wright in this case. There is, however, a troubling dimension here which the Court must address.

Wright is a lawyer of considerable experience. He prepared all the documents which will be rescinded by this decision. Wright had a personal interest in the subject matter of these instruments. He knew Yanok had no representation. He knew she was relatively inexperienced in these matters and called upon her to sign these instruments on the very occasion when she saw them for the first time. Yanok testified that she "believed in Mr. Wright" and relied on him to represent her. Wright denied that he assumed her representation. Despite this denial, Wright prepared her Articles of Incorporation, named himself as registered agent, wrote Yanok asking for the names of officers and directors, and billed her on two occasions for "professional services rendered." He testified that billing her was a mistake. He defends his position of not representing her by claiming that obtaining a corporate charter is a clerical function which could be performed by anyone and that he did not advise her on the nuances of incorporating.

Wright's conduct was improper. He knew Yanok's interests were in conflict with his. He knew, or should have known, that she was relying on him in executing documents wherein she assumed substantial and binding legal commitments. Wright had an express duty to insist, in this Court's view, that she have the documents reviewed by counsel of her own choosing, and in the event she declined to do so, he should have had her acknowledge in writing that she understood Wright had a conflicting interest with her own, that she had been urged by him to retain counsel, that she understood Wright was not representing her, and that she knowingly and voluntarily waived her right to have her own counsel assist her.

Wright's conduct is all the more egregious because the business purchase agreement obligated Yanok to pay him $87,000.00, and she received nothing of value in return.

This document dramatically demonstrates the complete unfairness of the situation and Wright's willingness to take personal advantage of it.

Wright, as a member of the legal profession, is presumed to know and appreciate the canons, ethical considerations, and disciplinary rules of the Code of Professional Responsibility. He has, as do all lawyers, an affirmative duty to cultivate public respect for the legal profession by acting in a forthright and discreet manner in all endeavors. Candor and fairness in all dealings must be expected by members of the bar if the honor of the legal profession is to be upheld.

With regret, we note that Mr. Wright's conduct in this matter wholly fails to meet these standards.

### Conclusion

The lease, business purchase agreement, note, deed of trust, and escrow agreement will be rescinded. On defendant's Cross Bill, we find for plaintiff. On the Bill of Complaint, we find for plaintiff and award her compensatory damages of $7,921.49 plus reasonable attorney's fees to be determined as soon as counsel can arrange a hearing for the purpose.