## CIRCUIT COURT OF WARREN COUNTY

Conrad G. Newton,
Christine V. Newton

v.

Patricia Burch,
Stephen C. Lockhart,
Kimberly B. Lockhart,
t/a Lockhart Construction, and
Capital Realty Limited Partnership

May 10, 1993

Case No. (Law) 92–196

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Demurrer of the Defendants to the Motion for Judgment of the Plaintiffs. Upon consideration of the argument of counsel and the Memoranda filed by them, the Court has made the following decision.

### I. *Statement of Material Pleaded Facts*

For the purpose of ruling on the Demurrers, the following facts are alleged in the Motion for Judgment.

Plaintiffs herein purchased property known as Lots 25 and 27, Skyland Estates, Warren County, Virginia, with a house to be constructed thereon, from Defendants Stephen Lockhart and Kimberly Lockhart by contract dated July 2, 1991.

Defendant Burch was a real estate agent affiliated with Defendant Capital Realty and is alleged to be the agent of the Defendants Lockhart and Capital.

Plaintiffs sued for a breach of contract against Defendants, Stephen C. and Kimberly B. Lockhart (although Kimberly B. Lockhart is not

mentioned in any of the documents attached to the Motion for Judgment), breach of expressed warranty against Stephen C. and Kimberly B. Lockhart, breach of implied warranty against Stephen C. and Kimberly B. Lockhart and fraud against all of the Defendants.

In Count Four of the Motion for Judgment, it is claimed that Burch misrepresented the significance of an addendum to the sales contract which was executed by the parties, including the Plaintiffs. The addendum in question provided that "Purchaser acknowledges that lot 25/27 B1 12 Sec 3 is a 2 bedroom perc, with a three bedroom home" (Motion for Judgment, para. 13), and Plaintiffs allege that Burch and her office manager told them that the execution of the addendum was a mere formality and "did not change a thing." Plaintiffs assert that the aforesaid alleged misrepresentation constituted a fraud upon them, that Burch allegedly knew that the representation was false at the time it was made, that the representation was as to a material fact and was made intentionally.

The Plaintiffs further allege, among other things, that Burch misinformed them concerning certain documents they signed altering the perc requirements of the lot; that there was little or no water available to the home; that what was available "has been tested and found to be contaminated with harmful bacteria and rodents"; that the second well and cistern constructed by defendant, Stephen C. Lockhart, had not been constructed in accordance with applicable codes and that permits had not been obtained; that numerous other problems were encountered in the new home, including water leaks in the basement damaging furniture, that the space constructed for the washer and dryer was too small, that the access stairs from the home blocked a basement window, a wash basin cabinet has cracked, French doors are discolored, the bathtub chipped, and that demands for repair made at the time of the walk-through and subsequent thereto have been ignored.

Plaintiffs allege that "by virtue of their participation in the construction of the home," the Defendants Lockhart impliedly warranted that "the home was developed, manufactured, constructed, designed, inspected, and reviewed in a workmanlike manner and would be of merchantable quality appropriate to modern life."

The Plaintiffs further allege that the following defects resulted from a breach of the alleged implied warranty to employ workmanlike methods:

(a) water infiltration in the basement,

(b) stairwell constructed as to obscure light available to the basement,

(c) chipped bathtub noted at the time of final inspection,

(d) wash basin cracked,

(e) discoloration of French doors.

Plaintiffs pray for damages of $150,000.00 against all defendants and $50,000.00 in punitive damages against Burch and Capital Realty.

Defendants, Stephen C. and Kimberly B. Lockhart have demurred to the breach of implied warranty count, which alleges, among other things, that there is an implied warranty that there would be sufficient water for normal family use and that the water would be potable.

Defendants, Stephen C. and Kimberly B. Lockhart, also demurred on the basis that except for the applicable statutory and contractual warranties, the rule of *caveat emptor* applies to this case, and there is no basis at law for a claim of implied warranty.

The Defendants Burch and Capital have demurred to the allegations contained in Count Four of the Motion for Judgment on the ground that Plaintiffs have failed to state a cause of action for fraud in that they have failed to allege that they reasonably relied upon the representation allegedly made by Defendant Burch and on the ground that the statement attributed to Burch concerned an expression of Burch's opinion of the legal effect of certain language contained in an addendum to the contract. These Defendants have also demurred to the prayer for punitive damages.

## II. *Conclusions of Law*

*Demurrer*

In considering a demurrer, the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). Counts I and II may more appropriately have been subsumed within a single count, but viewed in their totality, they do state a cause of action for breach of contract and breach of express warranty. Having examined Count III of the motion for judgment, which is a claim against the Lockharts for breach of implied contract, and drawing "all reasonable inferences fairly and justly drawn from the facts alleged . . . in aid of the pleadings," it would appear that this

can be read as an action for breach of the implied statutory warranties set forth in Virginia Code § 55–70.1 and that Count IV states a cause of action for fraud.

## Implied Statutory Warranty

The sale from the Lockharts to the Newtons is subject to the provisions of Va. Code § 55–70.1, which provides as follows:

> A. In every contract for the sale of a new dwelling, the vendor shall be held to warrant to the vendee that at the time of the transfer of record title or the vendee's taking possession, whichever occurs first, the dwelling with all its fixtures is, to the best of the actual knowledge of the vendor or his agents, sufficiently (i) free from structural defects, so as to pass without objection in the trade, and (ii) constructed in a workmanlike manner, so as to pass without objection in the trade.
>
> B. In addition, in every contract for the sale of a new dwelling, the vendor, if he be in the business of building or selling such dwellings, shall be held to warrant to the vendee that, at the time of transfer of record title or the vendee's taking possession, whichever occurs first, the dwelling together with all its fixtures is sufficiently (i) free from structural defects, so as to pass without objection in the trade, (ii) constructed in a workmanlike manner, so as to pass without objection in the trade, and (iii) fit for habitation.

The water system is subject to the implied statutory warranty set forth in § 55–70.1. The water is an integral part of the dwelling, and it is "an important and necessary appurtenance to its intended use and so part of it." *Seabright v. Nesselrodt*, 4 Va. Cir. 322, 324–325 (1985) (speaking of the sewage system). If the water system and other defects complained of result from construction not done in a workmanlike manner, such defects may violate the statutory warranty of § 55–70.1, or the express warranty in this case.

## Elements of Fraud

In *Bryant v. Peckinpaugh*, 241 Va. 172, 175–176, 400 S.E.2d 201 (1991), the Supreme Court reviewed the elements of a viable fraud action:

A litigant who prosecutes a cause of action for actual fraud must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Winn v. Aleda Construction Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984). *See also, Wolford v. Williams*, 195 Va. 489, 498, 78 S.E.2d 660, 665 (1953); *Ashby v. Red Jacket Coal Corp.*, 185 Va. 202, 207, 38 S.E.2d 436, 439 (1946); *Chandler v. Satchell*, 160 Va. 160, 171–72, 168 S.E. 744, 748 (1933); *Moore v. Gregory*, 146 Va. 504, 523, 131 S.E. 692, 697 (1925) . . . .

We said in *Greenbrier Farms v. Clark*, 193 Va. 891, 894, 71 S.E.2d 167, 169 (1952):

The object of a motion for judgment . . . is to set forth the facts which constitute the cause of action so that they may be understood by the defendant who is to answer them, by the jury who are to ascertain whether such facts exist, and by the court which is to give judgment.

The case of *Bergmueller v. Minnick*, 238 Va. 332, 336–337, 383 S.E.2d 772 (1989), in which the Supreme Court was confronted with a case where it was represented that a successful perc had been made on the property, when that was untrue, is instructive:

The Bergmuellers base their claim for rescission upon allegations amounting to constructive fraud, not actual fraud. They make no contention that they were intentionally deceived. We set forth the elements of constructive fraud in *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 629, 331 S.E.2d 490, 492 (1985) in the following language:

In order to establish constructive fraud, one must prove the following by clear, cogent, and convincing evidence: (1) that there was a material false representation, (2) that the hearer believed it to be true, (3) that it was meant to be acted on, (4) that it was acted on, and (5) that damage was sustained.

It is apparent from the findings of fact made by the chancellor that the Bergmuellers carried their burden of proving constructive fraud by clear and convincing evidence. The chancellor found that the failure of the sellers to obtain a

percolation test was a material breach of the contract which would have given the purchasers an excuse for non-performance. Thus, the representation made in writing by the sellers' agent at and before settlement: "Percolation test: Copy of satisfactory approval in Broker's office," was both material and false. The hearer, the settlement attorney who acted as the purchasers' agent with respect to insuring that contract contingencies were met before disbursing funds, believed the representation to be true. The representation was acted on by completing the settlement. The purchasers sustained damage by paying for a lot which was worthless for their purposes.

Constructive fraud is a ground for rescission in equity, even when based upon false representations innocently made. The real inquiry is not whether the seller knew the representation to be false, but whether the purchaser believed it to be true and was misled by it into acting to his detriment. *Trust Co. of Norfolk v. Fletcher*, 152 Va. 868, 879, 148 S.E. 785, 788 (1929).

It follows that the Bergmuellers were entitled to the relief of rescission unless they waived that right by proceeding to settlement. The trial court, relying on *Costello v. Larsen*, 182 Va. 567, 29 S.E.2d 856 (1944), took the view that (1) the Bergmuellers and the Minnicks had equal means of access to the true state of facts, (2) the Bergmuellers might easily have asked to see the results of a percolation test before proceeding to settle, but they carelessly accepted the Minnicks' deficient performance without making further inquiry, and (3) they thereby waived the provision inserted into the contract for their protection.

*Costello* is inapposite. That case was an action in tort to recover damages for deceit. There, we affirmed the trial court's dismissal of the action on demurrer because the facts pleaded related to statements of opinion made in reference to future occurrences, rather than representations of existing facts. Language in Nationwide is particularly germane to the present case: "[O]ne cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresenta-

tion was made was negligent in failing to learn the truth." 229
Va. at 631, 331 S.E.2d at 492.

In the case at bar, the representations of the realtor that the change in
the contract altering the description of the perc test "communicated the
present effect of the . . . language, not its future impact." *See, Campbell v. Bettius*, 244 Va. 347, 421 S.E.2d 433 (1992); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 315 S.E.2d 193 (1984); and *Tuscarora v. B.V.A.*, 218 Va. 849, 858–859, 241 S.E.2d 778 (1978). Therefore, the
Motion for Judgment alleging fraud will withstand demurrer.

*Actual Malice or Wanton Disregard of the Plaintiff's Rights Must Be Proven to Recover Punitive Damages*

In *Jordan v. Suave*, 219 Va. 448, 451–453, 297 S.E.2d 739 (1978),
the rule is stated:

> In discussing the proof necessary to support an award of punitive damages in *Pigg*, we pointed out: "Punitive or exemplary damages are allowable only where there is misconduct
> or actual malice, or such recklessness or negligence as to
> evince a conscious disregard of the rights of others. They are
> allowed not so much as compensation for plaintiff's loss, as to
> warn others and to punish the wrongdoer, if he acted wantonly, oppressively, or with such malice as to evince a spirit of
> [mischief] or criminal indifference to civil obligations. Wilful
> or wanton conduct imports knowledge and consciousness that
> injury will result from the act done" [citations omitted]. 207
> Va. at 685–86, 152 S.E.2d at 277 . . . .
>
> We hold that the same rule of the proof necessary to support
> a claim for punitive damages which applies to actions for false
> arrest, false imprisonment and malicious prosecution also applies to a claim for punitive damages in an action based on
> fraud; namely, that punitive damages may be recovered only if
> there is proof, either direct or circumstantial, showing actual
> malice.

In fraud actions as in other civil actions, if the Defendants acted "with
actual malice toward the plaintiffs or acted under the circumstances
amounting to a willful and wanton disregard of the plaintiffs'
rights . . . ." then punitive damages may be awarded. Model Jury
Instruction No. 9.080. Paragraph 36 of the Motion for Judgment al-

leges that the "misrepresentation was made intentionally with the intent to mislead Plaintiffs," which is tantamount to "willful disregard of the plaintiffs' rights."

*Vicarious Liability for Fraud*

The innocent principal may be held liable for the fraud of his agent. In *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 632, 331 S.E.2d 490 (1985), the rule is stated:

> With regard to the second main issue, Nationwide argues that it is an innocent principal and cannot be held responsible for Huffman's misrepresentation. We cannot accept this contention. Nationwide argues that only by its direct participation can it be held liable for its agents' conduct. We have long adhered to the rule that "a principal is bound by representations of his agent, made either in the scope of his employment or in furtherance of the object for which he is employed." *Cerriglio v. Pettit*, 113 Va. at 542, 75 S.E. at 307. In *Jefferson Stand. Ins. Co.*, we explained that the rule is one of public policy and convenience; we said that: "in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through instrumentality of agents. In every such case, the principal holds out his agent, as competent and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency." 181 Va. at 834, 27 S.E.2d at 202 (quoting J. Story, Commentaries on the Law of Agency § 452 (9th ed. 1882)). We reaffirmed our view on this subject in *Dudley*.

While the innocent principal may be held liable for the fraud of his agent, punitive damages "cannot be awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify." *Hogg v. Plant*, 145 Va. 175, 181, 133 S.E. 759 (1926); *accord Oberbroeckling v. Lyle*, 234 Va. 373, 382, 362 S.E.2d 682 (1987); and *Freeman v. Sproles*, 204 Va. 353, 358, 131 S.E. 410 (1963). There is no allegation that Capital participated in or ratified the allegedly fraudulent acts of Burch. Therefore, the demurrer as to the punitive damage claim against Capital should be sustained.

*Parol Evidence Does Not Apply to Fraud in the Inducement of a Contract*

In *J. E. Robert Co. v. J. Robert Co.*, 231 Va. 338, 443–444, 343 S.E.2d 350 (1986), the Supreme Court discussed the application of the parol evidence rule to a fraud in the inducement of a contract case:

> A further exception exists in situations where a contract is claimed to have been procured by fraud. In such situations, parol evidence has been allowed to establish the true agreement between the parties. 228 Va. at 183, 320 S.E.2d at 343–44; *Baker v. Berry Hill Co.*, 109 Va. 776, 782, 65 S.E. 656, 659 (1909). Here, Robert, Jr., also claimed that the oral agreement was used to induce the written agreement and that the written agreement was procured by fraud. By this approach, as well as the others, Robert, Jr., should have had the opportunity to prove, in his defense, the oral agreement . . . .
>
> With regard to the fraudulent inducement issue, Robert, Jr., was required to prove that his father promised not to withhold commissions from former salesmen, that at the time he made the promise, he intended not to perform, and that the promise was made to induce Robert, Jr., to act to his detriment. *See Colonial Ford v. Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985); *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 351, 297 S.E.2d 647, 651–52 (1982); *Lloyd v. Smith*, 150 Va. 132, 145–47, 142 S.E. 363, 365–66 (1928). Moreover, Robert, Jr., was required to prove the alleged fraud by clear, cogent, and convincing evidence. *See, Sea-Land Service, Inc.*, 224 Va. at 351, 297 S.E.2d at 651–52.

### III. *Decision*

For the foregoing reasons, it is therefore adjudged and ordered that the demurrers are overruled, except for Capital's Demurrer to the punitive damage claim against Capital, which is sustained.