# Wytheville.

## M. J. Fulton v. Henrico Lumber Company.

June 13, 1929.

The opinion states the case.

*L. M. Bazile* and *D. C. O'Flaherty,* for the plaintiff in error.

*McGuire, Riley & Eggleston* and *Aubrey R. Bowles, Jr.,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

M. J. Fulton, as the owner of standing poplar, gum and maple timber, on his farm near Fair Oaks, Virginia, in July, 1920, made an agreement to sell some of it to the Henrico Lumber Company. So much of the contract as is now material is thus expressed in a letter from the vendee (plaintiff) to the vendor (defendant):

"This is to confirm our conversation to the effect that we will pay you $16.00 per cord of 180 cu. ft., f. o. b. cars, Fair Oaks, Virginia—Southern Railroad—

for such poplar, gum and maple pulpwood cut according to the usual specifications and barked as you can deliver by January 1, 1921, up to 200 cords—it being our understanding that this is the probable amount that you will get. This agreement is subject to the usual clause guaranteeing the market price as included in our regular form of the pulpwood contract—copy of which we enclose."

This form of contract had these provisions:

"In case the fair market price at the time of delivery of any lot of wood is higher than the price stated in this contract, the Henrico Lumber Co., Inc., agrees either to meet the then fair market price, or to allow the seller to sell such wood elsewhere.

"In case, however, that advances have been made against wood under this contract and the Henrico Lumber Co., Inc., does not agree to meet the then fair market price, the seller is not to be allowed to sell such wood, nor any of the remainder of the wood purchased under this contract elsewhere until the total amount of the advances made by the Henrico Lumber Co., Inc., on account of the said lot of wood, and all the remainder of the wood covered by this contract shall have been repaid with interest."

The original contract is correctly summarized in the brief for the defendant in error thus:

"1. The sale of so much pulpwood, f. o. b. cars at Fair Oaks, Virginia, at $16.00 per cord of 180 cubic feet, as could be delivered prior to January 1, 1921, not exceeding 200 cords.

"2. The further agreement of Henrico Lumber Co., Inc., in the alternative—

"(a) To pay the market price at the time of delivery, if that price exceeded the price named in the contract, or

"(b) To release Fulton from his agreement to deliver

the wood prior to January 1, 1921, and permit him to sell elsewhere, provided any advances made upon the purchase price were repaid by him in full.

"The agreement covered three distinct phases. It will be particularly noted that the essential condition of the contract was delivery by January 1, 1921. The second phase provided a benefit to Fulton whereby he was protected in case of an increase in the market price at the time of delivery. In such case the vendee had the option to meet this increased price or permit Fulton to sell elsewhere, but Fulton's right to avail himself of the right to sell elsewhere, if vendee did not agree to pay the market price at the time of delivery, was conditioned upon a return by him of any advances of the purchase price made to him by the vendee."

The vendee (plaintiff) advanced $835.00 to the vendor (defendant) in varying amounts, upon different dates following the date of the contract, until November 2nd. No part of this amount was ever repaid or tendered by the vendor, except the credit to which he became entitled because of the shipment of between eleven and twelve cords of wood on or about December 20th. This credit amounts to $211.20. No other delivery of wood was made by the vendor under the contract, which by its terms expired January 1, 1921, leaving a balance of $623.80 due by him to the vendee on account of these advancements. This action is brought to recover that amount.

There was a jury trial, which resulted in a verdict and judgment in favor of the vendee, Henrico Lumber Company, for that sum, with interest from January 22, 1921, and it is of this judgment that the plaintiff in error, M. J. Fulton, vendor, is here complaining.

It is, we think, unnecessary to recite all of the claims and contentions found in the record. The assignment

of error which is chiefly relied on grows out of the fact
that on December 30, 1920, the Henrico Lumber Com-
pany sent out this notice to all shippers from whom it
had purchased wood:

"Due to the fact that the pulp and paper mills have
been forced to shut down on account of the existing
business conditions, and to the congestion and lack of
storage space at the mills, we have been forced to
delcare an embargo on all shipments of rail poplar and
gum wood effective from January 1st until further
notice. You are, therefore, notified that no bills of
lading will be accepted dated January 1st or later until
you are advised of the lifting of this embargo.

"Regretting the fact that we must take this action,
but trusting you will realize the necessity for same, we
are  *  *  *."

The defense is built upon this communication, which
it is observed was sent just before, to be effective after,
the right to deliver wood under this contract expired.
It is here insisted that it should have been considered
by the trial court and here as an isolated fact, without
reference to any of the other pertinent facts, and that
so considered it should have been construed by the
court to relieve the vendor of his obligation to ship
the wood prior to January 1, 1921; that it was a waiver
on the part of the vendee of its right to require such
delivery; and that it continued the contract in effect,
and extended the delivery date thereunder, until the
vendor should receive further notice from the vendee.

There was, however, much other testimony. There
was the parol testimony and letter introduced by the
vendee to the effect that it had always insisted upon
the performance of the contract according to its terms,
and tending to show that the vendor was at no time
prepared to perform it. There was Mr. Fulton's denial

of each of these claims. This general notice to stop shipments on account of the embargo makes no specific reference to this particular contract, but there is a letter from the Henrico Lumber Company to Mr. Fulton, dated December 10, 1920, directly referring to it, which reads:

"We will thank you to let us have a reply to our recent letter asking when we might expect shipment of wood which you are to deliver at Fair Oaks. With market conditions as they are now, we are particularly anxious to get all of this material delivered before January 1st, when our contract expires as to price."

On December 15, 1920, the vendor (Fulton) wrote to the lumber company: "I have about two carloads of pulpwood at Fair Oaks, but I have been unable to haul it to the station because of being in court every day. I have advertised, but I cannot get anyone to haul it. If you could give me the name of someone who would, I would appreciate it."

While the general rule is that documents must be construed by the court and should not be submitted to a jury, there are exceptions to this rule. Cases frequently arise in which the parties have by parol modified their written contract, or where there are obscurities which may be clarified by parol testimony, or where the document to be construed is ambiguous and cannot be understood without proof of the attendant circumstances by parol testimony. If there be material conflicts in such admissible parol testimony, it frequently occurs that the interpretation of the documents becomes a mixed question of law and fact which it is necessary to submit, as to the question of fact, to a jury, with proper instructions.

There were hopeless conflicts in the parol testimony in this case, but no good purpose would be served

by undertaking to recite these conflicts with particularity. The conflicting claims of the litigants are fairly outlined in these instructions which were given.

Upon motion of the plaintiff (vendee), the court gave instructions "A" and "B" which follow:

"A. The court instructs the jury that the plaintiff agreed with the defendant that it would purchase from the defendant such poplar, gum and maple pulpwood, cut and barked according to specifications, as the defendant could deliver to the plaintiff on board cars at Fair Oaks, Virginia, at any time prior to January 1, 1921, up to a total of 200 cords at a price of $16.00 per cord; and that the plaintiff further agreed with the defendant, that in case the market price at the time of the delivery on board cars of the said pulpwood at Fair Oaks, Virginia, was higher than the price stated in the contract, the plaintiff would then either meet the fair market price at the said time of delivery or else allow the defendant to sell such wood elsewhere, provided, however, that, in case advances of money were made by the plaintiff to the defendant against such wood to be delivered under the contract, and the plaintiff would not agree to meet the fair market price at the time of delivery, it was a condition of the contract that the defendant could not sell such wood which was to be delivered under the contract to any other parties unless and until the amount of such advances made by the plaintiff to the defendant was repaid by the defendant to the plaintiff with interest; and

"The court further instructs the jury that if they believe from the evidence that the plaintiff made advances in money to the defendant upon wood to be delivered under the contract and that the defendant failed to deliver to the plaintiff pulpwood on board.

cars at Fair Oaks, Virginia, prior to January 1, 1921, in amounts sufficient to equal said advances, then the jury must find for the plaintiff, in the amount as stated in the account, unless they believe from the evidence that the plaintiff, Henrico Lumber Company, waived delivery on January 1, 1921."

"B. The court instructs the jury that the burden is on the defendant to show by a preponderance of the evidence that the plaintiff, Henrico Lumber Company, waived the provision of the contract between the parties requiring the delivery of the wood involved by the defendant on or before January 1, 1921."

Upon motion of the defendant (vendor), the court gave instructions "C" and "D" which follow:

"C. The court further instructs the jury that if they believe from the evidence in this case that between December the 15th and December the 23rd, 1920, Fulton was having hauled, loaded and delivered the wood in question on board cars at Fair Oaks, Virginia, and that he could have completed such delivery by January the 1st, 1921, and that the Henrico Lumber Company, about December the 22nd, notified Fulton that its mill yards were congested and asked him to delay the completion of the delivery of such wood until further notice after January the 1st, 1921, and that pursuant to such request Fulton stopped his employees from hauling, loading and completing the delivery of such wood on board cars at Fair Oaks, Virginia, on or about December the 22nd, 1920, and that the Henrico Lumber Company, after January the 1st, 1921, notified Fulton that it would not take or receive from him the wood at all under the terms of the contract, and that he was at liberty to sell it to others and that Fulton after receiving such last named notice made the best sale he could of such wood to others and sustained a

loss by reason of decline in the market price of such wood, then the Henrico Lumber Company is liable to Fulton for such loss and the jury should so find."

"D. The court instructs the jury that if they believe from the evidence in this case that the plaintiff postponed or waived the time of delivery of the wood contracted for, or led the defendant to believe they would take the wood at some later date than the time mentioned in the contract, to-wit, January 1, 1921, and thereby caused the defendant to refrain from delivering or selling the wood without loss to himself, then plaintiff is responsible for whatever loss was sustained by the defendant having to sell the wood at a lower price."

There was testimony tending to support these conflicting contentions, but the verdict of the jury has determined the issues.

We can add nothing of value to the memorandum of the learned trial judge, which was handed down when he refused to set aside the verdict of the jury and grant the defendant a new trial. That reads:

"In this case the pleadings show that the plaintiff sued upon a claim that the defendant agreed to sell, and the plaintiff agreed to buy from the defendant, certain pulpwood to be delivered by January 1, 1921; that after crediting advances made to the defendant by the price of wood delivered prior to that date, there was a balance due plaintiff of $623.80.

"In defense the defendant pleads by way of offset that after the contract was made the plaintiff agreed, in September, 1920, to pay a specified price of $19.00 a cord for the wood to be cut and delivered before January 1, 1921, and that in the latter part of December, 1920, the plaintiff requested the defendant to make no further deliveries of the wood until notified,

that the defendant was then ready to deliver the balance of said wood under the contract before January 1, 1921, but made no further deliveries by reason of that request, and that plaintiff had thereafter refused to accept the wood, which was then sold by defendant at a much less price than $19.00 a cord, causing him a loss which set-off against plaintiff's claim for advances left plaintiff indebted to defendant. The contract between the parties, made in July, 1920, is in writing and its meaning fairly clear. There have been two trials of the case, the first resulting in a failure of the jury to agree, and the second in a verdict for the plaintiff for the amount claimed.

"The issues arising upon the pleadings are plain. There was much oral testimony, covering, as now transcribed, a hundred typewritten pages, and in addition considerable correspondence between the parties. The main questions of fact before the jury to determine were whether defendant was prepared to deliver the quantity of wood, claimed by him as within the purview of the contract, before January 1, 1921, and he refrained from doing so by acts or conduct of or communications from the plaintiff and the plaintiff had so waived the contract expiration date for delivery. These and other questions were argued at length before the jury. The effect of the correspondence, in the light of the oral testimony of the parties, was for the jury. Some time had elapsed since the transactions took place, and naturally the memory of parties and of witnesses differed, giving rise to conflict of testimony. The law admitted of no especial difficulty, and I saw no reason to question a correct understanding of it by the jury.

"Now the jury has concluded the case by finding for one side, after a thorough threshing out of the rights

of the parties before and by the jury. An appeal is made to set aside the verdict. The controversy between the parties presented business problems, which were submitted to the arbitrament of the jury. The object of a jury trial, in cases of this sort particularly, is to reach a definite determination of disputed claims in a business transaction. As long as we have jury trials to settle such disputes, the court should not undertake, notwithstanding the verdict of the jury, to try the case itself.

"I feel obliged to overrule the motion to set aside the verdict."

While it may be conceded that the propositions of law for which the plaintiff in error contends are sound, they are unavailing in this case, because it depends not upon any debatable legal question but upon the determination of conflicts in the testimony.

*Affirmed.*