# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## STEVE J. EAGLER, ET AL. v. DREWRY LITTLE, ET AL.

April 22, 1977.

Record No. 760301.

Present, All the Justices.

*Donald H. Clark (Frederick T. Stant, III; Clark, Hofheimer and Stant,* on briefs), for plaintiffs in error.

*A. Joseph Canada, Jr. (Ansell, Butler & Canada,* on brief), for defendants in error.

Per Curiam.

This is an appeal from an order dismissing a lessor's motion for judgment for unlawful detainer.[1]

In May, 1972, Steve J. Eagler and Janet A. Eagler, his wife, leased certain business property to Drewry Little and Angie E. Little, his wife. Drafted by the lessees' attorney, the lease provided in pertinent part:

"4. The Lessees agree to pay all taxes . . . within 15 days after said . . . taxes are due.

. . . . .

"8. [S]hould the Lessees default in any of the convenants or conditions . . . the Lessor . . . may re-enter said premises and remove all persons therefrom. Should the Lessor be compelled to commence or sustain an action at law . . . to dispossess the Lessees, or to recover possession . . . the Lessees shall pay all costs . . . including a reasonable fee for the attorney of the Lessor.

. . . .

"13. If the Lessees . . . shall neglect or fail to perform and observe any covenant or condition . . . the Lessor may immediately or any time thereafter, and without notice or demand . . . repossess the same [premises] as of their former estate, and expel the Lessees . . . and thereupon this lease shall terminate, but without prejudice to any remedies which might otherwise be used by the Lessor for . . . any breach of the Lessees' covenants."

Taxes were due semi-annually on June 10 and December 5. So far as the record discloses, Little paid the taxes for the last half of 1972 and the first half of 1973. In October, 1974, Eagler, who lived in Bedford, received a delinquent tax notice and telephoned Little. Little told him that the taxes had been paid. Asked for the receipts, Little said that his lawyer had told him to retain them for tax purposes. Eagler received another delinquent tax notice early in 1975 and called Mrs. Little. She assured him that all taxes had been paid and promised to send him receipts or copies of the cancelled checks. Eagler never received either and, in the early spring of 1975, made a trip to Virginia Beach to talk with Little. Little insisted that he had paid the taxes and gave Eagler

---

[1] The form of the remedy pursued was not challenged in the court below and no cross-error was assigned.

the address of his bookkeeper who, he said, was holding the receipts and cancelled checks. The address proved to be a vacant office building.

By letter dated June 2, 1975, Eagler wrote to Little, enclosed a bill for taxes for the first half of 1975, and requested copies of the tax receipts or cancelled checks for the years 1973 and 1974. In this letter, Eagler also offered to sell the property to Little for $115,000 and advised him that if he did not want the property, it would be placed "on the open market at $150,000 on June 15, 1975, with the lease intact." Little called Eagler and told him that he was unable to buy but that on the advice of counsel, "he would settle . . . for $150,000 to vacate the lease."

On June 19, 1975, Eagler again wrote to Little terminating the lease and notifying Little to vacate the premises effective July 31, 1975. Receiving no reply, Eagler instituted suit on August 15, 1975.

The Eaglers testified that they had forwarded all tax bills to the Littles as soon as they were received in the mail. Little testified that he had read the lease prepared by his attorney but not "completely"; that he was aware of the requirement to pay taxes but did not recall the provisions authorizing the lessor to terminate the lease for breach of that requirement; and that the reason the taxes were not paid when due was that he failed to receive the bills from Eagler.

According to the records of the office of the City Treasurer, taxes for the first half of 1975 were timely paid on June 10, 1975, but delinquent taxes for the years 1973 and 1974 were not paid until some time following Eagler's letter of June 19, 1975. The last delinquent payment was made on August 15, 1975, the day suit was filed. Ruling that "the Defendant has substantially complied", the trial court entered an order on November 14, 1975, dismissing the motion for judgment.

In support of the trial court's ruling, Little cites the following:

"The general principle that contractual provisions for forfeiture are looked upon with disfavor by the courts is applicable to contracts of lease. Such stipulations are strictly construed and when they are invoked by a landlord for non-payment of rent, equity may relieve against them if complete justice can be done by the payment or tender of the arrears." 11 Michie's Jur. *Landlord and Tenant* § 42 (1950).

This is not a case of forfeiture for non-payment of rent. Defining the right of forfeiture for non-payment of taxes, the lease uses the terms "covenant" and "condition" interchangeably, and we will treat the case as one in the nature of forfeiture for breach of a condition subsequent.

"Conditions subsequent, because they tend to destroy estates, are not favored in law, and when effective to work a forfeiture of title they must have been created by express terms or clear implication. [Citations omitted].

"But the converse proposition is equally well settled. If it is the clearly expressed intention of the parties to create an estate upon a condition subsequent, the courts must give effect to such intention. [Citations omitted]." *Pence* v. *Tidewater Townsite Corp.*, 127 Va. 447, 451, 103 S.E. 694, 695 (1920).

Here, the condition subsequent was expressly stated in a document drafted by Little's attorney. Apparently, Little made the first two semi-annual tax payments. Thereafter, tax bills for three tax periods were not paid within fifteen days of the due date, and by those acts of omission the condition subsequent was broken and the right of forfeiture accrued. Little argues, however, that Eagler waived the right of forfeiture because he acknowledged in his letter of June 2, 1975 that the lease was still "intact".[2] We disagree.

"The waiver of one forfeiture is of course not a waiver of a subsequent forfeiture: And if the act of forfeiture be continuing, a waiver of a right of re-entry for one breach will not preclude a re-entry for a new or continuing breach." *McKildoe's Ex'or* v. *Darracott*, 54 Va. (13 Gratt.) 278, 285 (1856).

Even if Eagler's letter of June 2, 1975 be considered a waiver of forfeiture for prior breaches of the condition, it did not constitute a waiver of a continuing forfeiture. Uncontradicted evidence shows that the several breaches continued until after

---

[2] Citing Code § 55-248.34 (Cum. Supp. 1976), part of the "Virginia Residential Landlord and Tenant Act", Little also argued on brief that Eagler waived forfeiture by accepting rental payments. The record shows that the property was commercial in nature, and this argument was abandoned in oral argument. In any event, Eagler testified without contradiction that he accepted no rental payments for any period following the effective date of the termination of the lease.

Eagler had exercised the right of forfeiture in his letter of June 19, 1975.

The trial court held, in effect, that even after the right of forfeiture had been exercised, the several acts of forfeiture were cured by "substantial compliance". We hold otherwise. Little's breaches of the condition subsequent created statutory liens upon Eagler's title. The right to terminate the leasehold estate for such an act was a substantial right, one which arose from an arm's length contract supported by lawful consideration. Such contracts in no way offend public policy, and the courts will hold the parties to their bargain.

As this Court said in *Pence* v. *Tidewater Townsite Corp.*, *supra*, 127 Va. at 453, 103 S.E. at 696, "[i]n the case in hand we have a condition subsequent which has been broken, and, as the facts appear in the record before us, the grantor has the right to a reinvestiture of the title." The judgment will be reversed and final judgment will be entered here declaring the leasehold estate forfeited and the premises unlawfully detained, and ordering the Littles forthwith to vacate the premises and surrender possession to the Eaglers.

*Reversed and final judgment.*