COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, McClanahan and Haley
Argued at Chesapeake, Virginia


RENA SUZANNE WILLIAMS

MEMORANDUM OPINION* BY
v.        Record No. 3096-08-1            JUDGE JAMES W. HALEY, JR.
                                             SEPTEMBER 28, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Bruce H. Kushner, Judge

Robert E. Kowalsky, Jr., for appellant.

Richard B. Smith, Special Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on briefs), for appellee.


I.

Rena S. Williams ("Williams") appeals her conviction for robbery in violation of Code
§ 18.2-58. Both questions presented concern the legal implications of her prior conviction for
conspiracy to commit the same robbery pursuant to a plea agreement with the Commonwealth.
Williams argues that the trial court erred in denying her pre-trial motion to dismiss the extant
robbery indictment for two reasons: (1) that by obtaining a new indictment for robbery, the
Commonwealth violated the terms of the earlier guilty plea agreement in the conspiracy case;
and (2) that the new robbery indictment violated the constitutional prohibition against multiple
punishments for the same offense, as guaranteed by the Fifth Amendment's Double Jeopardy
Clause.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

II.

Facts

On August 6, 2002, a City of Chesapeake grand jury indicted Williams for a May 19,

2002 robbery. One Anthony Powell was, likewise, indicted for the same robbery.

Pursuant to a plea agreement, the Commonwealth amended the indicted crime of robbery

to conspiracy to commit robbery. Williams did not object to the amendment.[1] Williams entered

a plea of guilty to the amended charge on March 3, 2003. The written plea agreement, signed by

Williams, her attorney, and the attorney for the Commonwealth includes the following pertinent

language:

> (1) That the defendant stands indicted in this Court for one felony,
> to wit: Robbery in violation of Virginia Code Section 18.2-58.
>
> (2) The defendant agrees to plead guilty to: Conspiracy to Commit
> Robbery in violation of Virginia Code Section 18.2-22.
>
> (3) That the Attorney for the Commonwealth agrees that the
> following is the appropriate disposition of this case:
>
> The defendant will be sentenced to five years in the Virginia State
> Penitentiary. All of that sentence will be suspended based upon
> the following conditions.
>
>> (I) Defendant will be placed on supervised probation for an
>> indeterminate period.
>>
>> (II) Defendant must cooperate fully with the prosecution of
>> her co-defendant, Anthony Powell, to the satisfaction of the
>> Assistant Commonwealth's Attorney.
>>
>> (III) Defendant must pay restitution of $467.99 to [victim].
>> Defendant will be jointly and severally liable for the entire
>> amount with Anthony Powell.
>>
>> (IV) Defendant must pay the costs of these proceedings.

---

[1] Code § 19.2-231 permits amendments to an indictment "provided the amendment does not change the nature or character of the offense charged." See generally Powell v. Commonwealth, 261 Va. 512, 552 S.E.2d 344 (2001); Miles v. Commonwealth, 205 Va. 462, 138 S.E.2d 22 (1964); Pulliam v. Commonwealth, 55 Va. App. 710, 688 S.E.2d 910 (2010); see also Section IV of this opinion.

(4)  That this plea agreement is the total agreement between the parties and there have been no other inducements, promises, threats or coercion of any kind imposed upon the defendant or suggested to the defendant by the Attorney for the Commonwealth or any agent of the Commonwealth.

In this opinion, we shall refer to numbered paragraph (4) of the plea agreement as the "merger" or "integration" clause.

The final sentencing order, entered on March 14, 2003, imposes a suspended five-year prison sentence, upon conditions.  Those conditions included supervised probation and compliance with all rules and conditions set by the probation officer, good behavior, payment of restitution and court costs, and the following:  "The defendant shall cooperate fully with the prosecution of her co-defendant, Anthony Powell, to the satisfaction of the Assistant Commonwealth's Attorney."

On April 6, 2004, Williams was indicted for the robbery that was the subject of the 2003 plea agreement – the conviction from which Williams filed the instant appeal.  The Commonwealth sought the indictment because Williams had failed to cooperate in the prosecution of Anthony Powell, in violation of the terms of the plea agreement.

On December 7, 2005, a *capias* was issued for Williams' arrest, based upon a November 29, 2005 probation violation report.  That report alleged violations of absconding (to North Carolina in March 2005) and failure to pay restitution.  The report did not include any allegation that Williams had not cooperated in the prosecution of Anthony Powell.

On June 19, 2008, Williams appeared before the circuit court for the probation violation.  Two court-appointed attorneys were with her.  One of them (Stephen J. Burgess) had been appointed to defend Williams in the probation violation case.  The other (Allan D. Zaleski) had been appointed to defend her against a new indictment on the original robbery charge.  The Commonwealth was represented by David J. Whitted.

The following exchange occurred at the beginning of the June 19, 2008 hearing:

> MR. WHITTED:  Your Honor, the only indictment at this time is a violation of probation . . . .
>
> THE COURT:  All right.  What about — there was a robbery?
>
> MR. WHITTED:  Yes, that's set for trial for July 14th . . . .
>
> MR. ZALESKI:  Judge, I'm in that case, the robbery case.
>
> THE COURT:  All right.
>
> MR. ZALESKI:  They're interconnected, and that's why I'm present with Mr. Burgess.

After acknowledging the contents of the probation violation report, Williams admitted those violations.  She testified that she had been threatened by Anthony Powell and absconded to North Carolina because of those threats and her financial condition.[2]

During cross-examination, Whitted raised the question of Williams' agreement to testify against Powell.

> MR. BURGESS:  Judge, if I could, I'm going to object to questions along this line at this hearing.  Judge, *the probation requirements* that Ms. Williams had, Judge, *do not I don't believe include the requirement to testify against her co-defendant.  I believe* – my understanding from talking to Mr. Whitted is *that in in the plea agreement* – she agreed in the plea agreement to testify against her co-defendant.
>
> MR. WHITTED:  Which is in the Court's file.
>
> MR. BURGESS:  Which is in the Court's file, Judge, and that the – and there is a specific punishment or a specific sanction in the plea agreement if she does not testify against him.  In the probation violation itself, this – her failure to testify has not – was not mentioned.  She was – she was – she was compliant with her probation through March of '05, but I think the absconding letter was sent out in November of '05, Judge, and then she was indicted for the robbery subsequent to that time.  I don't believe, Judge, that the – whether or not she testified against her co-defendant is part of this probation violation.  *She has been indicted for robbery, which*

---

[2] For these violations, the trial court imposed the original five-year sentence for the conspiracy conviction but re-suspended all but nine months.

- 4 -

*is the punishment* or the sanction that would be placed on her *if she refused to testify, and I think that is the Commonwealth's remedy as they have structured it, and I don't think it should be part of this probation violation.*

\* \* \* \* \* \* \*

THE COURT:  All right.  My concern, Mr. Whitted, is you made the deal with her where you accepted a plea on the conspiracy charge.

MR. WHITTED:  Yes, sir.

THE COURT:  And that was consummated, and the court imposed sentence.  Then she reneged, and your only option at that point in time was to come back on the original robbery charge.

MR. WHITTED:  Yes, sir.

THE COURT:  I think this probation violation, fortunately or unfortunately, whichever the case may be, stands on its own merits, and the violation that's before us is not the reneging of her plea agreement, but has she complied with the terms of the probation.

MR. WHITTED:  Well, I'm not alleging that as a violation, Your Honor.  I'm just asking in the course of this violation as to how it pertains to her absconding from supervision.

THE COURT:  All right.  I don't think really that's the issue before the Court on – you know, you have your remedies that you have attempted to pursue on that issue, and I don't really think that's the issue before the Court, although it's some consideration. Why don't we move on?

(Emphasis added).  Counsel for Williams had no comment upon the court's ruling.

During his closing argument as to sentencing, Mr. Burgess argued that his client left supervision to get herself "away from the individual who was threatening her that she has testified to, and I'm assuming that in the latter robbery charge she may testify to that more completely."

- 5 -

We now turn to July 14, 2008, the day scheduled for the robbery trial. Counsel for Williams (Mr. Zaleski) moved to dismiss the indictment on double jeopardy grounds, and, further, in reliance on the plea agreement:

> MR. ZALESKI: I think it's very plain what the agreement is. I would think that the prosecutor would *either bring new indictments* [*sic*] *for robbery or the probation violation, but not both. He's already got the probation violation* in his pocket. *It's already been done, and I think that should end the matter.*

> MR. WHITTED: Your Honor, I'm not sure why he brought that in. He was present for the probation violation, and the violation of this plea agreement was not brought forward as a violation in the probation violation. She was violated on her probation violation because she absconded and failed to obey the conditions of her probation, which included paying her restitution and making regular probation appointments. It was not alleged in her violation that she violated the plea agreement by not cooperating with the prosecution of her codefendant, and I think Mr. Zaleski would admit that that is the truth because he was present at that probation violation.

(Emphasis added).

The case was continued for briefing the issues surrounding the motion to dismiss. The trial court ultimately denied the motion. On October 6, 2008, Williams pled not guilty, was found guilty, and was, thereafter, sentenced to five years in the penitentiary with three years suspended.

This appeal followed.

### III.

### Plea Agreement/Condition Subsequent

The law of contracts applies to plea agreements. Wright v. Commonwealth, 275 Va. 77, 80-82, 655 S.E.2d 7, 9-10 (2008); Esparza v. Commonwealth, 29 Va. App. 600, 606, 513 S.E.2d 885, 888 (1999); Sluss v. Commonwealth, 14 Va. App. 601, 604, 419 S.E.2d 263, 265 (1992). That application, however, is tempered by a criminal defendant's due process rights. Hood v. Commonwealth, 269 Va. 176, 181, 608 S.E.2d 913, 915-16 (2005); Lampkins v.

- 6 -

Commonwealth, 44 Va. App. 709, 722-23, 607 S.E.2d 722, 729 (2005).  Within this context, the

Supreme Court held in Hood:

> On appellate review, the trial court's interpretation of the
> agreement is a matter of law subject to *de novo* review, while a
> clearly erroneous standard of review is applied to the trial court's
> factual findings.  Sluss, 14 Va. App. at 606-07, 419 S.E.2d at
> 266-67; United States v. Smith, 976 F.2d 861, 863 (4th Cir. 1992);
> United States v. Conner, 936 F.2d 1073, 1076 (4th Cir. 1991).  We
> will apply these standards of review in this case.

Hood, 269 Va. at 181, 608 S.E.2d at 916.  That standard is thus applicable in the instant case.

As quoted above, the plea agreement contains an integration or merger clause.  "The

parol evidence rule is particularly applicable where the writing contains an integration or merger

clause . . . ."  29A Am. Jur. 2d Evidence § 1107.  That rule states:  "In controversies between

parties to a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations

is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous,

unconditional written instrument."  Godwin v. Kerns, 178 Va. 447, 451, 17 S.E.2d 410, 412

(1941), quoted with approval in Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth., 270 Va. 309,

316, 618 S.E.2d 323, 326-27 (2005).[3]

This Court requested supplemental briefing as to the following issues:  "Are there . . .

implied promises not expressly set out in a written plea agreement and, if so, are they

enforceable regardless of whether the agreement includes an 'integration' clause?"

There is case law which supports an affirmative answer to both inquiries.  See, e.g.,

United States v. Grimm, 170 F.3d 760, 763 (9th Cir. 1999) ("The government is strictly bound to

fulfill any express or implied promise made in exchange for a guilty plea contained in the plea

agreement."); United States v. O'Brien, 853 F.2d 522, 526 (7th Cir. 1988) ("[T]he government's

---

[3] A harsh application of this rule, we note, would entail finding that the written plea
agreement *did not state* that the Commonwealth *would not* seek a subsequent indictment for
robbery, whether Williams complied with, or did not comply with, the terms of her suspended
sentence for conspiracy to commit robbery.

promise [in a plea agreement] need not be explicit to be enforceable; an implied promise will do."); see also United States v. Burns, 990 F.2d 1426, 1432-33 (4th Cir. 1993).

In agreement with the appellant's position, the Commonwealth in its supplemental brief essentially concedes an affirmative answer to both inquiries, as a general proposition.[4] Nonetheless, "'[o]ur fidelity to the uniform application of law precludes us accepting concessions of law made on appeal. Because the law applies to all alike, it cannot be subordinated to the private opinions of litigants.'" Copeland v. Commonwealth, 52 Va. App. 529, 531-32, 664 S.E.2d 528, 529 (2008) (quoting Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*)).

That being said, as we held in Podracky v. Commonwealth, 52 Va. App. 130, 134, 662 S.E.2d 81, 84 (2008) (quoting Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*)): "'An appellate court decides cases on the best and narrowest ground available. . . . Coupled with these principles of judicial prudence is the proposition that an appellate court may structure a decision on an assuming without deciding basis.'" Accordingly, we assume, without deciding, that a written plea agreement may contain implied terms, despite the inclusion of an integration clause. And, further, we assume, without deciding, that here there was an implied term that the Commonwealth not seek a subsequent indictment if, as here relevant, Williams pled guilty to conspiracy to commit robbery, and upon the explicit terms of the plea agreement, cooperated in the prosecution of Powell.

---

[4]

> The foregoing supports a conclusion that a written plea agreement can include an unstated promise if it is reasonably implied or inherent as a corollary to a promise that is explicitly set out in the agreement, the existence of an "integration" or "merger" clause notwithstanding. The Commonwealth, however, also suggests that it is likewise true that an implied promise, like an express one, can be vitiated if the other party breaches the agreement.

Commonwealth's Supp. Br. at 9.

As defined in 17A Am. Jur. 2d <u>Contracts</u> § 464:

> A condition subsequent in a contract is one which follows liability upon the contract and operates to defeat or annul such liability upon the subsequent failure of either party to comply with the condition. A condition subsequent to an enforceable contract is a term of the contract, within the intent of the parties, that the happening or nonoccurrence of an event after the contract becomes binding upon the parties, which, by preagreement of the parties, causes the contract to terminate without further duties and obligations on any party. No precise technical words are required to create a condition subsequent in a contract.

The Virginia Supreme Court in <u>Rennolds v. Branch</u>, 182 Va. 678, 690, 29 S.E.2d 847, 851 (1944), quoted <u>Minor on Real Property</u> § 512 (2d ed.), defining a condition subsequent as "'one which is to be performed or fulfilled *after the vesting* of the estate, and the intent of which is to *defeat it*.'" <u>See also</u> <u>Burdis v. Burdis</u>, 96 Va. 81, 84, 30 S.E. 462, 462 (1898).

Because subsequent conditions are often related to a prior transfer of real property (either by deed or will), the Supreme Court in <u>Trailsend v. Virginia Holding Corp.</u>, 228 Va. 319, 324, 321 S.E.2d 667, 669 (1984), quoted <u>Lewis v. Henry's Executors</u>, 69 Va. (28 Gratt.) 192, 203 (1877), for the proposition that: "'Nothing is better settled than that in conditions subsequent, since they are in defeasance of interests already vested, courts of law and courts of equity are strict in requiring the *very event*, or the act to be done, with all its particulars, which is to defeat the interest previously vested.'"

Conditions subsequent can apply to contracts involving personal property, <u>Ellis & Meyers Lumber Co. v. Hubbard</u>, 123 Va. 481, 498, 96 S.E. 754, 759 (1918), or for the termination of a leasehold, <u>Eagler v. Little</u>, 217 Va. 869, 872, 234 S.E.2d 242, 244 (1977).

Conditions subsequent must be created "by express terms or clear implication." <u>Pence v. Tidewater Townsite Corp.</u>, 127 Va. 447, 451, 103 S.E. 694, 695 (1920) (citing <u>Millan v. Kephart</u>, 59 Va. (18 Gratt.) 1, 8 (1867)). Since conditions subsequent work a forfeiture of vested rights, they are to be strictly construed. <u>Keener v. Keener</u>, 278 Va. 435, 443, 682 S.E.2d 545,

548-49 (2009); Pence, 127 Va. at 451, 103 S.E. at 695; Peoples Pleasure Park Co. v. Rohleder, 109 Va. 439, 444, 61 S.E. 794, 796 (1908).  The burden of proof of the occurrence of a condition subsequent falls upon the party asserting the same.  Kirby v. Town of Claremont, 243 Va. 484, 490, 416 S.E.2d 695, 699-700 (1992); Morotock Ins. Co. v. Fostoria Novelty Co., 94 Va. 361, 365, 26 S.E. 850, 851 (1897).

Within this context, nonetheless, and as the Eagler Court stated:  "'If it is the clearly expressed intention of the parties to create an estate upon a condition subsequent, the courts must give effect to such intention.'"  Eagler, 217 Va. at 872, 234 S.E.2d at 244 (quoting Pence, 127 Va. at 451, 103 S.E. at 695).

A defendant has a *vested* interest in an executed written plea agreement, and the Commonwealth must honor the terms of that agreement.  The agreement may be enforced by requiring its specific performance.  Jones v. Commonwealth, 217 Va. 248, 256, 227 S.E.2d 701, 707 (1976); Jordan v. Commonwealth, 217 Va. 57, 59-62, 225 S.E.2d 661, 662-64 (1976); Johnson v. Commonwealth, 214 Va. 515, 518, 201 S.E.2d 594, 596 (1974).

In Calvillo v. Commonwealth, 19 Va. App. 433, 434, 452 S.E.2d 363, 363 (1994), pursuant to a plea agreement, Calvillo pled guilty to possession of cocaine, and, as authorized by Code § 18.2-251, disposition was deferred for one year, at which time the charge would be dismissed "conditioned that the defendant has no further violations of the law."  At a hearing more than one year later, though Calvillo had no further violations, the trial court refused to dismiss the charge because Calvillo had not appeared for the same.  Id. at 435, 452 S.E.2d at 364. We reversed, noting Calvillo's appearance was not required, and held "the trial court was bound to enforce the plea agreement . . . and to dismiss the charge."  Id.  The condition that Calvillo have no further violations for one year was a condition subsequent, within the plea agreement. Had he had a subsequent violation, the Commonwealth would not have been compelled to honor its agreement that the cocaine charge be dismissed.

Here, Williams asserts that there was an implied condition in her plea agreement; that is, that the Commonwealth would not after its execution indict her for robbery. As we have noted above, we have assumed, without deciding, that such a term existed, despite the integration clause. We must determine the scope of that implied condition. The assumption of the existence of the implied condition does not render that condition absolute and without limitation.

The existence of an "implied" condition necessarily renders the agreement ambiguous; it further negates the evidentiary proscription contained in the merger clause. While whether an agreement is ambiguous is a question of law, see, e.g., Langman v. Alumni Ass'n of the Univ. of Va., 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994); Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997), once that threshold determination is made, as here, the introduction of parol evidence is permissible to ascertain the intention of the parties with respect to the implied condition. The determination of that intent is a question of fact. "'[T]he proper construction of the contract is an issue for the trier of fact and the court should receive extrinsic evidence to ascertain the intention of the parties and to establish the real contract between them.'" Shoup v. Shoup, 31 Va. App. 621, 625, 525 S.E.2d 61, 63 (2000) (quoting Cascades N. Venture Ltd. P'ship v. PRC Inc., 249 Va. 574, 579, 457 S.E.2d 370, 373 (1995)); see also John H. MacLin Peanut Co. v. Pretlow, 176 Va. 400, 411, 11 S.E.2d 607, 611 (1940); Fulton v. Henrico Lumber Co., 152 Va. 666, 671, 148 S.E. 576, 577 (1929).

In resolving that question of fact, it is long established that "'[w]hen the terms of an agreement are . . . uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed.'" Dart Drug Corp. v. Nicholakos, 221 Va. 989, 995, 277 S.E.2d 155, 158 (1981) (quoting O'Quinn v. Looney, 194 Va. 548, 552, 74 S.E.2d 157, 159 (1953)); see also Smith v. Smith, 3 Va. App. 510, 518, 351 S.E.2d 593, 598 (1986).

As noted above, Mr. Zaleski (robbery counsel) was present at the show cause hearing on June 19, 2008, because the robbery charge and the show cause were, as he stated,

"interconnected." At that hearing, Mr. Burgess (show cause counsel) stated: "the probation requirements . . . do not . . . include the requirement to testify against her co-defendant. I believe . . . that is in the plea agreement . . . ." He continued: "She has been indicted for robbery, which is the punishment . . . if she refused to testify, and I think that is the Commonwealth's remedy as they have structured it [in the plea agreement], and I don't think it should be part of this probation violation."[5] The trial court stated in response (and the Commonwealth agreed) that: "Then she reneged, and your only option at that point in time was to come back on the original robbery charge . . . the violation that's before us is not the reneging of her plea agreement, but has she complied with the terms of the probation."

Succinctly stated, Williams took the *factual* position that her non-cooperation was a condition of her plea agreement, but not a condition of her suspended sentence. In short, the parties themselves resolved the factual inquiry; they agreed that the duty to cooperate was a condition of the plea agreement alone, one not intended to be contained in the sentencing order, and, accordingly, not a condition of the suspended sentence. The trial court accepted, and specifically relied upon, that factual resolution in the show cause hearing and in rendering its decision.

We now turn to the motion to dismiss the robbery charge. As noted above, Mr. Zaleski, in that motion, argued that the Commonwealth could "either bring new indictments [sic] for robbery or the probation violation, but not both. He's already got the probation violation . . . . It's already been done, and I think that should end the matter."[6]

---

[5] As noted, it was not alleged as a violation of the suspended sentence in the probation officer's report which led to the show cause hearing.

[6] On brief, the Commonwealth argues that Williams' position with respect to the robbery charge is one of approbation and reprobation. Under settled principles, a criminal defendant cannot "'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory. Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong.'" Rowe v.

We have assumed the agreement contained an implicit condition not to indict for robbery following its execution. But that agreement contained an express condition subsequent — that she was to subsequently, thereafter, cooperate in the prosecution of Powell. It is not disputed that she did not meet that condition subsequent, and thus the Commonwealth has met its burden of proof to establish the non-occurrence of the condition subsequent. With that proof, any vested interest in the implicit term of the plea agreement, which we have assumed to exist, dissolved and was forfeited. The Commonwealth was free to seek a new indictment for robbery.[7] Accordingly, the motion to dismiss the new indictment was properly denied.

## IV.

### Double Jeopardy

We next consider Williams' claim that the second robbery indictment violated double jeopardy principles. "Whether there has been a double jeopardy violation presents a question of law requiring a *de novo* review." Fullwood v. Commonwealth, 279 Va. 531, 539, 689 S.E.2d 742, 747 (2010). "[The constitutional protection against double jeopardy] provides three distinct guarantees. 'It protects against a second prosecution for the same offense after acquittal. It

---

Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009) (quoting Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006)); see also Porter v. Commonwealth, 276 Va. 203, 231, 661 S.E.2d 415, 428 (2008); Muhammad v. Commonwealth, 269 Va. 451, 525, 619 S.E.2d 16, 58 (2005); Powell v. Commonwealth, 267 Va. 107, 144, 590 S.E.2d 537, 560 (2004); Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988), cert. denied, 490 U.S. 1028 (1989). We offer no comment upon this argument as we base our disposition upon other grounds.

[7] At the time of the execution of the plea agreement, Williams knew as a matter of law that pursuant to Rule 1:1, the resolution of her plea of guilty to conspiracy to commit robbery became final twenty-one days after the final order was entered. In short, neither she nor the Commonwealth could extinguish that plea and sentencing at the time she chose not to honor her agreement to cooperate.

protects against a second prosecution for the same offense after conviction. And it protects

against multiple punishments for the same offense.'" Jordan v. Commonwealth, 2 Va. App. 590,

593, 347 S.E.2d 152, 154 (1986) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).

In United States v. Dixon, 509 U.S. 688, 704 (1993), the United States Supreme Court

overruled Grady v. Corbin, 495 U.S. 508 (1990), which had articulated the "same-conduct" test

for double jeopardy analysis. See id. at 521 ("a subsequent prosecution must do more than

merely survive the Blockburger test"). Instead, Dixon held that the Blockburger or "same-

elements" test was the appropriate test – indeed, the exclusive test – to determine whether a new

prosecution is a second prosecution for the same offense in violation of the Double Jeopardy

Clause. Dixon, 509 U.S. at 704.

> The same-elements test, sometimes referred to as the
> "Blockburger" test, inquires whether each offense contains an
> element not contained in the other; if not, they are the "same
> offence" and double jeopardy bars additional punishment and
> successive prosecution. In a case such as [State v.] Yancy, [4 N.C.
> 133 (1814)], for example, in which the contempt prosecution was
> for disruption of judicial business, the same-elements test would
> not bar subsequent prosecution for the criminal assault that was
> part of the disruption, because the contempt offense did not require
> the element of criminal conduct, and the criminal offense did not
> require the element of disrupting judicial business.

Id. at 696-97. "In applying the Blockburger test, we look at the offenses charged in the abstract,

without referring to the particular facts of the case under review." Coleman v. Commonwealth,

261 Va. 196, 200, 539 S.E.2d 732, 734 (2001).

The case is before us on Williams' appeal of her conviction for robbery, in violation of

Code § 18.2-58.

> Robbery is a common-law crime in Virginia, although its
> punishment is prescribed by Code § 18.2-58. It is a crime against
> the person. Its elements are "the taking, with intent to steal, of the
> personal property of another, from his person or in his presence,
> against his will, by violence or intimidation."

Pritchard v. Commonwealth, 225 Va. 559, 561, 303 S.E.2d 911, 912 (1983) (quoting Mason v. Commonwealth, 200 Va. 253, 254, 105 S.E.2d 149, 150 (1958)). She contends this prosecution violated constitutional double jeopardy principles because she had previously been convicted of conspiracy to commit robbery in violation of Code § 18.2-22 ("Conspiracy to Commit a Felony"). This statute states:

> If any person shall conspire, confederate or combine with another, either within or without this Commonwealth, to commit a felony within this Commonwealth, or if he shall so conspire, confederate or combine with another within this Commonwealth to commit a felony either within or without this Commonwealth, he shall be guilty of a felony which shall be punishable as follows . . . .

"A conspiracy is an agreement between two or more persons by some concerted action to commit an offense." Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000). Applying the "same-elements" test, it is clear that each of Williams' convictions required proof of an element that the other did not. The crime of conspiracy to commit robbery requires proof that a person conspired "with another" to commit a robbery, an element that is not part of the definition of common law robbery. Moreover, the crime of robbery requires proof of several elements that are not in the definition of conspiracy, including proof that the defendant took property, proof that the property belong to another person, proof that the taking was against that person's will, proof that the taking was with the intent to steal, and proof that the taking was accomplished by violence or intimidation. Pritchard, 225 Va. at 561, 303 S.E.2d at 912.

While conceding that her final offenses of conviction are not the same for purposes of the "same-elements" test, Williams argues that she entered her guilty plea to the first robbery indictment *before* the Commonwealth amended the indictment to conspiracy to commit robbery. Thus, according to Williams, jeopardy attached in the earlier proceeding with respect to the same robbery offense for which she was later convicted a second time. As a general matter, we agree with Williams that, when a criminal defendant pleads guilty, jeopardy attaches when the court

- 15 -

accepts the defendant's guilty plea, see Peterson v. Commonwealth, 5 Va. App. 389, 395, 363 S.E.2d 440, 444 (1987), but we do not believe Williams' version of what happened at her first guilty plea hearing is supported by the record before us. Specifically, the final sentencing order in the conspiracy case states that "the defendant was arraigned, and after being advised by her counsel, pleaded guilty to the indictment, *as amended*, which plea was tendered by the defendant in person." (Emphasis added). "The maxim that 'trial courts speak only through their orders and that such orders are presumed to reflect accurately what transpired' is the well-established law of this Commonwealth." Rose v. Commonwealth, 265 Va. 430, 435 n.2, 578 S.E.2d 758, 761 n.2 (2003) (quoting McMillion v. Dryvit Sys., Inc., 262 Va. 463, 469, 552 S.E.2d 364, 367 (2001)). Because the trial court's order suggests that the Commonwealth amended the robbery indictment to conspiracy *before* Williams entered her guilty plea and the court accepted her plea, we must hold that her subsequent indictment for robbery did not violate double jeopardy.

V.

Conclusion

For the foregoing reasons, Williams' conviction for robbery is affirmed.

Affirmed.